# DECISIONS

### OF THE

## SUPREME JUDICIAL COURT

### OF

## MASSACHUSETTS

---

WILLIAM F. KING vs. ROBERT F. DRISCOLL & others.[1]

Middlesex. December 6, 1995. - December 12, 1996.

Present: WILKINS, C.J., O'CONNOR, GREANEY, & FRIED, JJ.

*Employment*, Termination. *Contract*, Employment, Implied covenant of good faith and fair dealing, Damages. *Corporation*, Stockholder. *Law of the Case.*

A judge of the Superior Court correctly dismissed a claim for breach of the implied covenant of good faith and fair dealing implied in a terminable at-will employment contract, where the plaintiff had offered no evidence that he had been denied compensation for work performed for the employer. [5-7]

This court declined to reconsider an issue decided upon an earlier appeal in the same case. [7-8]

A Superior Court judge improperly, on remand, undertook to recalculate damages on a certain civil claim and the plaintiff was entitled to the damages assessed by the judge prior to remand plus interest and attorney's fees. [8]

CIVIL ACTION commenced in the Superior Court Department on June 28, 1990.

---

[1]Albert Marchant and F.S. Payne Co.

Following review by this court, 418 Mass. 576 (1994), further proceedings were had before *Vieri Volterra*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Morris M. Goldings* (*John F. Aylmer, Jr.*, with him) for the plaintiff.

*Richard L. Neumeier* for Robert F. Driscoll & others.

O'CONNOR, J. This case is here on appeal for the second time. See *King* v. *Driscoll*, 418 Mass. 576 (1994) (*King I*). King's complaint contains four counts. Count I is directed solely at the defendant F.S. Payne Co. (Payne) and sets forth two theories of liability. King alleges that he, as employee, and Payne, as employer, were parties to a terminable at-will employment contract. One theory is that the contract as a matter of law included a covenant of good faith and fair dealing which Payne breached by terminating King's employment. The other theory is that Payne's termination of King's employment violated public policy and for that reason King is entitled to damages from Payne. In count II, King claims that the defendants Robert F. Driscoll and Albert Marchant, as well as two other individuals who are not parties to this appeal, intentionally interfered with King's employment contract, thereby making them liable to him. Count III states that Driscoll, Marchant, and a third person who is not a party to this appeal, violated the duty of utmost good faith and loyalty they owed to King as their fellow shareholder in a close corporation. Finally, King alleges in count IV that Payne is liable to him because the corporation discharged him in violation of its by-laws.

The case was tried jury waived in the Superior Court. A full statement of facts may be found in *King I, supra* at 577-580. We recite those of the judge's findings that are most relevant to the issues presented by this appeal. At all relevant times Payne was a closely held Massachusetts corporation. Payne's upper-level management positions were occupied by individuals who owned relatively large amounts of stock in that corporation until August, 1990, when all Payne's stock was sold to Northern Elevator of Toronto. Beginning in 1954, Payne employees who purchased Payne stock were required to enter into a "buy-back" agreement that allowed Payne to repurchase the stock of such an employee at the end of his or her employment. King's employment with Payne began in

1958 and continued until his termination in November, 1987, at which time he was vice-president of the manufacturing division. King was a Payne shareholder when his employment was terminated. His employment was terminated because of his participation in a derivative shareholder suit.

The judge concluded that King was entitled to recover from Payne on count I on the two theories expressed therein, breach of the covenant of good faith and fair dealing and violation of public policy. With respect to count II, the judge found Driscoll and another defendant, Michael Martin, who is not involved in this appeal, liable for intentional interference with King's contract of employment. The judge concluded as to count III that Driscoll and Marchant violated the duty of utmost good faith and loyalty they owed to King as their fellow shareholder in a close corporation and thus were liable to him. The judge determined that King was not entitled to recovery under count IV.

The judge concluded that King was "entitled to both contract and tort damages under count I of the complaint against Payne; tort damages under count II which claims interference with a contractual relationship by Driscoll, Marchant and Martin; and tort and contract damages under count III which claims damages for breach of the implied covenant of good faith and [loyalty] against Driscoll and Marchant." Pursuant to the judge's order, a final judgment entered "[a]s to Counts I, II and III of the complaint . . . in behalf of the plaintiff William F. King against the defendants F.S. Payne Co., Robert F. Driscoll, Albert Marchant and Michael Martin, jointly and severally." The final judgment set forth in detail the items taken into account by the judge in assessing damages, including the specific amount of money assigned to each item. The items included back pay, the monetary value of a company automobile perquisite, fringe benefits, the lost benefit of a company retirement plan, and King's loss of stock profits that he would have realized from the sale of Payne stock to Northern Elevator of Toronto in August, 1990. The total assessment of damages against Payne, Driscoll, Marchant, and Martin "jointly and severally" as to counts I, II, and III was $528,800.89 plus interest and, in addition, attorney's fees and costs in the sum of $133,485.81. The judge also assessed damages against Driscoll alone as to counts II and III in the sum of $23,516.64 plus interest. The

judge found that Driscoll had realized a benefit of that amount from his wrongdoing. Additional damages in the sum of $2,936.28 were assessed against Martin under count II for the same reason.

The defendants appealed, as did King with respect to the judge's decision adverse to him on count IV. We dealt with those appeals in *King I, supra.* We held that the judge had erred in finding for King on count I based on King's violation of public policy theory. *Id.* at 581-585. With respect to King's other theory asserted in count I, however, the claim of breach of the covenant of good faith and fair dealing implied in terminable at-will employment contracts, we said, "The judge's conclusions on each part of count I . . . were independent of each other. The defendants thoroughly argued on appeal their position as to the first part of count I, the public policy exception, but they did not argue the second part, the breach of the covenant described in *Fortune* [v. *National Cash Register Co.,* 373 Mass. 96, 101 (1977)]. Thus, the issue of the breach of the covenant of good faith and fair dealing is not before us. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Our conclusion regarding the first part of count I does not affect the judge's finding on the second part. . . . On remand, the judge should *recalculate damages, if any,* attributable to the breach of the covenant of good faith and fair dealing owed to King *as an employee.* See *Fortune, supra* at 104-105; *Gram* v. *Liberty Mut. Ins. Co.,* 384 Mass. 659, 672 (1981), *S.C.,* 391 Mass. 333 (1984)" (emphasis added). *Id.* at 585 n.8.

Also, in *King I, supra,* we reversed the judge's holding, favorable to King, on his claim of intentional interference with contractual relations set forth in count II, and, because the judge's award of attorney's fees was based on rulings in favor of King on his claims of wrongful termination of employment in violation of public policy (count I) and intentional interference with contractual relations (count II), which rulings we reversed, we also vacated the award of attorney's fees. *Id.* at 588.

The final paragraph of the court's opinion in *King I, supra,* was this:

"*Conclusion.* The portion of the judgment of the Superior Court finding the defendants liable for wrongful termination in violation of public policy is reversed.

The portion of the judgment of the Superior Court find-ing the defendants liable for intentional interference with contractual relations also is reversed. The award of at-torney's fees is vacated. The remainder of the judgment is affirmed. The case is remanded for further proceed-ings, including recalculation of damages, in accordance with this opinion." *Id.* at 589.

Following the order of remand, the judge issued a "Memo-randum And Final Order For Judgment After Rescript" in which he expressed his intention to recalculate damages "to reflect the reversal of [his earlier] decision on certain counts." The judge focused on counts I and III. He dismissed count I on the ground that "the plaintiff has shown no damages." His reasoning was that "although there was a violation of the implied covenant of good faith and fair dealing owed to an employee" and "[a] plaintiff may recover damages for the denial of earned compensation reflective of work performed prior to termination . . . plaintiff has offered no evidence that he was denied compensation for work performed." The judge recalculated the damages as to count III by reducing them to $23,516.64 plus interest to be paid by Driscoll and $1,814.20 plus interest to be paid by Marchant. These sums were awarded "to disgorge [Driscoll and Marchant] from unlawful profits lawfully due the plaintiff." Judgment as to count III was entered accordingly. Judgment entered dismissing the complaint as to counts I, II and IV. King, Driscoll and Marchant appealed. We granted King's application for direct appellate review.

The issues in this appeal relate only to counts I and III. King does not now contend that counts II and IV were improperly dismissed. In *King I, supra,* this court reversed the judgment that had been entered in the Superior Court as to count I insofar as it was based on a violation of public policy theory. However, in *King I, supra,* due to the absence of a challenge by the defendant Payne to King's other theory of liability set forth in count I, that is, that Payne breached the covenant of good faith and fair dealing implied in termin-able at-will employment contracts, we stated that that issue, which had been resolved in King's favor by the judge, was not before us. *King I, supra* at 585 n.8. Nevertheless, because the appropriate measure of damages in connection with the two theories presented by count I was not the same, we ad-

vised, as we have noted above, that "[o]n remand, the judge should recalculate damages, *if any*, attributable to the breach of the covenant of good faith and fair dealing owed to King as an employee" (emphasis added). *Id.* In addition, in *King I*'s concluding paragraph, we remanded the case "for further proceedings, including recalculation of damages, in accordance with this opinion." *Id.* at 589.

On remand, the judge concluded with reference to the remaining viable claim under count I that King "offered no evidence that he was denied compensation for work performed and, therefore, Count I is to be dismissed." After considering King's arguments, we agree with the judge that no such evidence was offered. Therefore, in accordance with our cases discussed below, no breach of the implied covenant of good faith and fair dealing was proved.

In *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 101 (1977), we held that the defendant employer's written contract with its employee "contain[ed] an implied covenant of good faith and fair dealing, and a termination not made in good faith constitutes a breach of the contract." We stated that "[w]here the principal seeks to deprive the agent of all compensation by terminating the contractual relationship when the agent is on the brink of successfully completing the sale, the principal has acted in bad faith and the ensuing transaction between the principal and the buyer is to be regarded as having been accomplished by the agent. . . . The same result obtains where the principal attempts to deprive the agent of any portion of a commission due the agent." *Id.* at 104-105. Subsequently, in *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 672 (1981) (*Gram I*), we held that breach of the implied covenant of good faith and fair dealing occurs when, despite the employer's good faith, the discharge of the terminable at-will employee nevertheless results in the employee's loss of compensation already earned. We remanded the case "for a determination of damages, measured by the amount of renewal commissions Gram reasonably could have expected to receive, reduced to reflect the proportion of his time that would reasonably have been expected to have been devoted to the servicing of those renewal policies." *Id.* at 673. Gram, we said, "has made no specific showing of his loss of any other identifiable, future benefit, such as pension rights, *reflective of past services* to Liberty" (emphasis added). *Id.*

Consistent with our decisions in *Fortune* and *Gram I, supra,* the court held in *Maddaloni* v. *Western Mass. Bus Lines, Inc.,* 386 Mass. 877, 884 (1982), involving a terminable at-will employment contract, that "the judge properly refused to instruct the jury on the issue of lost wages and fringe benefits unrelated to past services," and in *Kravetz* v. *Merchants Distribs., Inc.,* 387 Mass. 457, 463 (1982), we said, "We have implied an obligation of good faith and fair dealing in an employment contract terminable at will to prevent an employer from being unjustly enriched by depriving the employee of money that he had fairly earned and legitimately expected, but it was improper for the judge to instruct the jury here that they could consider lost wages if they found that the employment was terminable at will." Finally, in *Gram* v. *Liberty Mut. Ins. Co.,* 391 Mass. 333, 334-335 (1984) (*Gram II*), this court made the following observations:

> "It is important to recall that Gram served as an employee at will. He is not entitled to damages on the basis of a breach of a contract for life or for a term of years. The recovery allowed Gram in our earlier opinion pressed to the limit the recovery allowed to an at-will employee discharged without cause. . . . We must be careful not to approach allowance of contract damages as if Gram had a contract for life or for a term of years. Our goal is and has been simply to deny to Liberty any readily definable, financial windfall resulting from the denial to Gram of compensation for past services."

In keeping with the rationale of the cases referenced above, we agree that King has not satisfied his burden of proving a breach of the covenant of good faith and fair dealing implied in a terminable at-will employment contract because he has failed to present evidence that he was denied compensation for work performed. The defendant Payne, therefore, is entitled to judgment in its favor on count I.

We turn now to count III, and we focus first on the defendants' (Driscoll and Marchant) contention that we should reconsider our affirmance in *King I, supra,* of the judge's determination of the defendant shareholders' liability for violating the duty of good faith and loyalty they owed to their fellow shareholder in a close corporation. This we decline to do. The "law of the case" doctrine reflects this

court's reluctance "to reconsider questions decided upon an earlier appeal in the same case." *Peterson* v. *Hopson,* 306 Mass. 597, 599 (1940). An issue "once decided, should not be reopened 'unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.' *White* v. *Murtha,* 377 F.2d 428, 432 (5th Cir. 1967)." *United States* v. *Rivera-Martinez,* 931 F.2d 148, 151 (1st Cir.), cert. denied, 502 U.S. 862 (1991). None of those circumstances is present in this case.

We come, then, to the question whether this court's order in *King I* contemplated the judge's recalculation of count III damages on remand. We answer that question in the negative. Quite clearly, the contemplated recalculation of damages was related only to the claim in count I that Payne, as King's employer, violated the covenant of good faith and fair dealing implied in their employment contract. It must be remembered that two very different theories of recovery, implicating different measures of damages (contract and tort) were asserted in count I. For the purpose of assessing damages, the judge did not distinguish between the two theories, one of which we rejected in *King I.* It was necessary, therefore, that the judge reconsider the question of damages as it related to the remaining theory. Nothing in *King I* suggests, however, that, on remand, recalculation of damages as to count III would be appropriate. We affirmed the judgment as to count III, and we did so without discussion of damages or any intimation that the initial assessment was questionable. The remand order did not call for recalculation of all damages. Rather, it called for recalculation of damages "in accordance with this opinion," which opinion discussed damages in connection with count I, see *King I, supra* at 585 n.8, but not otherwise. King is entitled to recover damages under count III from the defendants Driscoll and Marchant as assessed by the judge prior to remand plus interest and without attorney's fees. Judgment for the defendants as to counts I, II, and IV is affirmed.

*So ordered.*