Gants, J.
The defendant Globe Newspaper Company, Inc. (“The Globe”) publishes a print newspaper, The Boston Globe, and an Internet web site, Boston.com, where its newspaper articles and photographs are available on-line. The Globe also transfers or sublicenses the use of certain newspaper articles and photographs to other online media, such as Mead Data Central Corp.’s NEXIS database, where they are re-published under The Globe’s name.
The plaintiffs are writers and photographers who were freelance contributors to The Globe. For many years, the plaintiffs’ relationship with The Globe was governed by an oral agreement in which the plaintiffs, as independent contractors, either regularly or episodically sold their work for a fee to The Globe for publication in The Boston Globe. Under this oral agreement, the plaintiffs retained the copyright interests in their work and did not expressly grant The Globe any license to re-publish their work in any media other than The Boston Globe, its print publication. The plaintiffs contend that, in the absence of any such express agreement to license or transfer their rights, The Globe may not re-publish their work without their consent in any electronic media or database. The Globe has a different view of this oral agreement. It contends that, under the oral agreement, it was privileged to re-publish the work it purchased from these freelancers in Boston.com and other electronic databases such as NEXIS without the plaintiffs’ consent.
A similar dispute is being litigated by The Globe’s parent company, The New York Times Company, and six of its freelancers in Tasini v. The New York Times Company, Inc., 206 F.3d 161 (2d Cir.), cert. granted, 121 S.Ct. 425 (2000). In Tasini, the Second Circuit, interpreting the Copyright Act of 1976, 17 U.S.C. §201(c), held that, in the absence of an express transfer of copyright or copyright rights, The New York Times may not re-license to NEXIS the articles and photographs it obtained from the plaintiff freelancers without the freelancers’ consent. Id. at 170. The out *191 come and effect of this litigation remains in doubt, since the United States Supreme Court has granted certiorari in the case.
After the Second Circuit’s decision in Tasini, which raised the specter that The Globe may be obligated to compensate its freelancers for the fair value of their work that had been re-published in electronic media without their consent, The Globe decided to give each of its freelancers an ultimatum: either sign a new written License Agreement which, among other provisions, granted to The Globe for no additional fee “a non-exclusive, fully-paid up, worldwide license to use all of the Works that The Globe has previously accepted from [the freelancer],” or, effective July 1,2000, The Globe will not accept any additional work from the freelancer.[1] This ultimatum left the freelancers with an unpleasant choice: either surrender all their rights that are being litigated vicariously in Tasini and continue to sell their freelance work to. The Globe, or preserve those rights and lose indefinitely the ability to sell their work to The Globe.
Five of the plaintiffs — William Marx, Greg Mironchuck, Michael Quan, Carl Walsh, and Linda Weltner — have refused to execute the proposed License Agreement and, as a result, can no longer sell their freelance work to The Globe. One plaintiff — Rick Hornick — executed the License Agreement online but later sought to rescind the Agreement. The final plaintiff — Cate McQuaid — executed the License Agreement and does not seek recission.
The plaintiffs, in their First Amended Complaint (“Complaint”), allege that The Globe has committed an unfair or deceptive act or practice in violation of G.L.c. 93A, §11 by making this ultimatum. In addition, the plaintiffs allege that The Globe violated G.L.c. 93A, § 11 by distributing to all freelancers an e-mail dated April 24, 2000, which, although purporting to resolve “the misunderstandings this contract has caused . . . and make [The Globe’s] intent clearer,’’.actually misrepresented the terms of the proposed License Agreement. The Globe now moves to dismiss the complaint for failure to state a claim under Mass.R.Civ.P. 12(b)(6). After hearing, the motion to dismiss the complaint is DENIED.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the factual allegations of the complaint and all reasonable inferences favorable to the plaintiffs which can be drawn from those allegations. Fairneny v. Savogran, 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The issue is whether the facts alleged, generously construed in favor of the plaintiffs, state a valid legal claim that would warrant relief on any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). “[The] complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979) (“[A] complaint is not subject to dismissal if it would support relief on any theory of law”).
In evaluating whether the plaintiffs have stated a claim under G.L.c. 93A that would entitle them to relief in this case, it is important initially to separate out what the plaintiffs do not claim and do not dispute. First, the plaintiffs do not dispute that they are independent contractors who maybe terminated at will by The Globe. The plaintiffs concede that The Globe would have acted lawfully if they had simply informed the plaintiffs that The Globe no longer wished to publish their work. See PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975) (mere refusal to deal, without more, does not constitute an unfair trade practice under G.L.c. 93A).
Second, the plaintiffs also do not dispute that The Globe would have acted lawfully if they had given the plaintiffs an ultimatum that the Globe would continue to publish their work only if they executed a License Agreement that granted certain licensing rights to The Globe with respect to work provided to The Globe during the life of that Agreement. While the plaintiffs do not like the terms of the proposed License Agreement with respect to future work because it requires freelancers to grant The Globe a non-exclusive license to publish their work in any media, including electronic media, provided the work is “marketed and/or grouped under The Globe’s name or brand,” they acknowledge that The Globe is entitled to impose that condition. The crux of their claim is that The Globe lawfully may only set these conditions with respect to work provided to The Globe after execution of the License Agreement, and may not require them to relinquish their licensing rights with respect to work provided to The Globe before execution of this Agreement.
G.L.c. 93A, §2(a) makes unlawful any “[u]nfair or deceptive acts or practices in the conduct of any trade or commerce.” G.L.c. 93A, §2(a). The Supreme Judicial Court has stated “that the following are ‘considerations to be used in determining whether a practice is to be deemed unfair: (1) whether the practice ... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) . . . is immoral, unethical, oppressive, or unscrupulous; (3). . . causes substantial injury [to]. . . competitors or other businessmen.’ ” Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 778 (1986), quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975), quoting 29 Fed.Reg. 8325, 8355 (1964).
“Every contract implies good faith and fair dealing between the parties to it.” Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991), quoting *192 Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, 362 n. 9 (1990), and Kerrigan v. Boston, 361 Mass. 24, 33 (1972). “The implied covenant of good faith and fair dealing provides ‘that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . ” Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. at 471, quoting Drucker v. Roland Wm. Jutras Assocs., 370 Mass. 383, 385(1976), and Uproar Co. v. National Broadcasting Co., 81 F.2d 373, 377 (1st Cir.), cert. denied, 298 U.S. 670 (1936). In Anthony’s Pier Four, Inc., the Supreme Judicial Court affirmed a finding that Anthony’s violated both the express terms of the contract and the implied covenant of good faith and fair dealing by unreasonably withholding approval of the master plan for development of the Fan Pier in Boston in an attempt to pressure the developer, HBC Associates, “to sweeten the deal” HBC had previously entered into with Anthony’s. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. at 470 and 473.
The Supreme Judicial Court also found that this conduct, as a matter of law, constituted an unfair act or practice under G.L.c. 93A. Id. at 474. In making this finding, the Court declared that “conduct ‘in disregard of known contractual arrangements’ and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes.” Id. quoting Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 857 (1986).
In the instant case, as in Anthony's Pier Four, Inc., the defendant is attempting “to sweeten the deal” previously entered into with the plaintiff freelancers by pressuring them to relinquish any rights they may have to compensation for The Globe’s prior use of their work, without their consent, in electronic media. The instant case, however, does not fall squarely within the contours of the Anthony's Pier Four, Inc. doctrine because, in that case, Anthony’s violated an express term of the contract by unreasonably withholding approval of the development plan and, in this case, the plaintiffs do not allege that The Globe has violated any express term in the oral agreement governing the purchase and publication of their freelance work by requesting them to execute the License Agreement. Therefore, for all practical purposes, the plaintiffs ask this Court to extend the Anthony’s Pier Four, Inc. doctrine by declaring that a cause of action arises under G.L.c. 93A when a defendant, without violating any express term in a contract, threatens termination of a contract that is terminable at will in order to pressure the plaintiff to relinquish rights or benefits that have already accrued under that contract.
A party may breach the covenant of good faith and fair dealing implicit in every contract without breaching any express term of that contract. Indeed, nowhere is this principle better demonstrated than in the line of cases beginning with Fortune v. National Cash Register Co., 373 Mass. 96 (1977). Fortune was employed by National Cash Register Co. (“NCR”) under a salesman’s contract that was terminable at will, without cause. Id. at 97. Under the contract, Fortune was paid a weekly salary, plus commissions based on the amount of sales made within his sales territory. Id. As a result of a huge order of cash registers within his territory, Fortune became entitled to a substantial commission upon the shipment of those cash registers. Id. at 98-99. After the first shipment was made, Fortune was paid only 75 percent of the commissions due to him, and was thereafter terminated. Id. at 99-100. As a result of his termination, he was not paid either the remaining commissions due him on the cash registers already shipped or any additional commissions on the cash registers scheduled to be subsequently shipped. Id. at 99-100. The Supreme Judicial Court found that “under the express terms of the contract Fortune has received all the bonus commissions to which he is entitled.” Id. at 101. Despite finding that NCR had breached no express term of its contract with Fortune by terminating him and depriving him of the additional commissions that he otherwise would be due, the Court held NCR violated the implied covenant of good faith and fair dealing by terminating him for the purpose of paying Fortune “as little of the bonus credit as it could.” Id. at 101 and 105. Indeed, the Court declared that a principal acts in bad faith whenever it “attempts to deprive the agent of any portion of a commission due the agent.” Id. at 105. See also King v. Driscoll, 424 Mass. 1, 12 (1996).[2]
However, the contract damages that may be awarded to an at-will employee for this breach of the implied covenant of good faith and fair dealing are limited to the amount of the commissions he had fairly and legitimately earned. See, e.g., King v. Driscoll, 424 Mass. at 12; Kravetz v. Merchants Distribs., Inc., 387 Mass. 457, 463 (1982). He is not entitled to injunctive relief to prevent or rescind the termination, or to damages for lost wages and benefits. King v. Driscoll, 424 Mass. at 12. Damages for such breaches are limited to unjust enrichment damages — the amount required to prevent an employer from being unjustly enriched by depriving an employee of money that he had fairly earned and legitimately expected. King v. Driscoll, 424 Mass. at 12; Kravetz v. Merchants Distribs., Inc., 387 Mass. at 463. In short, the principal of an agent terminable at will may terminate the relationship, even if the principal’s purpose is to deny the agent the commissions he had earned. The law will thwart that purpose by awarding the agent the commissions that are due and depriving the principal of any unjust enrichment, but the law will not restore the agent to his position or award him lost wages, benefits, or future commissions. See King v. Driscoll, 424 Mass. at 12. See also Gram v. Liberty Mut. Ins. Co., 391 Mass. 333, 334-335 (1984) (“Gram II").
In each of the above cases, like Fortune, where an employee was deprived of sales commissions already *193 earned, the termination of employment or agency resulted in the denial of any further entitlement to commissions. Consequently, the finding of a breach of the implied covenant of good faith and fair dealing was necessary to achieve the award of those commissions as unjust enrichment damages.
In the case at bar, the threatened termination of the freelancers’ relationship with The Globe would not deprive them of their entitlement to any compensation they may be entitled to for the fair value of their work that had been re-published in electronic media without their consent. If they were to refuse The Globe’s demand that, as a condition of continuing to sell work to The Globe, they relinquish their claim to any compensation that may become due if the Supreme Court were to affirm the holding in Tasini, they would remain entitled to that contingent compensation. They would simply not be working with The Globe any more. Therefore, for those five plaintiff freelancers who have refused to execute the proposed License Agreement and have consequently been terminated by The Globe, the relief granted in the Fortune line of cases does them no good, because their termination does not result in the denial of the compensation, albeit contingent compensation, they have already earned. Phrased differently, for them, there are no unjust enrichment damages.
A breach of the implicit covenant of good faith and fair dealing, if in trade or commerce, may constitute an unfair and deceptive act under G.L.c. 93A. See Kattar v. Demoulas, 433 Mass. 1, 13 (2000) (conduct in bad faith is actionable under §11); Massachusetts LNG Inc. v. Industrial National Leasing Corp., 8 Mass. L. Rptr. No. 27, 627 (September 7, 1998) (Lauriat, J.). However, the Fortune line of cases were decided purely on contract grounds because all derived from an employment relationship, and therefore were not in trade or commerce under G.L.c. 93A. See Manning v. Zuckerman, 388 Mass. 8, 12 (1983) (Chapter 93A does not apply to wrongs allegedly arising out of employment relationship). Therefore, these cases never confronted whether a remedy apart from unjust enrichment damages may be appropriate under G.L.c. 93A for a bad faith termination.
These five plaintiffs seek to extend the definition of an unfair and deceptive act or practice in violation of G.L.c. 93A beyond the reach of the Anthony’s Pier Four, Inc. doctrine (because The Globe did not violate any term of its oral contract with the freelancers) and beyond the scope of the implied covenant of good faith and fair dealing in at-will contracts (because The Globe is not unjustly enriched by their termination). They wish this Court to find that a principal may commit an unfair or deceptive act when it threatens an independent contractor terminable at-will with termination unless that independent contractor agrees to waive its claim to an already earned benefit, even when the independent contractor does not succumb to the ultimatum and refuses to waive its claim.
The remaining two plaintiffs, who agreed to the License Agreement, wish this Court to find that a principal may commit an unfair or deceptive act when it makes this ultimatum, even when they succumbed to the ultimatum and agreed to waive their rights. They maintain that their submission to the ultimatum does not obviate the unfairness of The Globe’s declaration of the ultimatum.[3]
For all practical purposes, the proposed License Agreement may be viewed as an attempt by The Globe to modify the existing oral agreement with the freelancers by, among other things, expressly relinquishing the freelancers’ claim to compensation for the prior publication of their work in electronic media under The Globe’s name. In the context of commercial transactions under the Uniform Commercial Code, an agreement by the parties to modify or rescind an agreement may be binding without additional consideration. G.L.c. 106, §2-209(1). If this were a commercial transaction under the Uniform Commercial Code (which it is not) rather than an agreement governing the provision of services by an independent contractor, then the modifications set forth in the Licensing Agreement, if executed, would generally be binding even if the continued purchase of work by The Globe were not recognized as additional consideration. However, the Uniform Commercial Code provides an exception to this general rule: the modifications, to be binding, “must meet the test of good faith" imposed by the Code. G.L.c. 106, §2-209, Uniform Commercial Code Comment 2. The Comment provides;
The effective use of bad faith to escape performance on the original contract terms is barred, and the extortion of a “modification” without legitimate commercial reason is ineffective as a violation of the duty of good faith. Nor can a mere technical consideration support a modification made in bad faith.
The test of “good faith” between merchants or as against merchants includes “observance of reasonable commercial standards of fair dealing in the trade” (Section 2-103) and may in some situations require an objectively demonstrable reason for seeking a modification. But such matters as a market shift which makes performance come to involve a loss may provide such a reason even though there is no such unforeseen difficulty as would make out a legal excuse from performance under Sections 2-615 and 2-616.
G.L.c. 106, §2-209, Uniform Commercial Code Comment 2.
If a merchant’s ability to modify a sales agreement is limited by the test of good faith under the Uniform Commercial Code, it is hardly unreasonable to limit the ability of a merchant to modify an independent contractor’s agreement by that same test under Chap *194 ter 93A. The Supreme Judicial Court recently reiterated:
Chapter 93A is “a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights.” Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693 (1975). The relief available under c. 93A is “sui generis. It is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action.” Id. at 704. It “mak[es] conduct unlawful which was not unlawful under the common law or any prior statute.” Commonwealth v. DeCotis, 366 Mass. 234, 244 n. 8 (1974). Thus, a cause of action under c. 93A is “not dependent on traditional tort or contract law concepts for its definitions.” Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 626 (1978).
Kattar v. Demoulas, 433 Mass. at 12-13. Both the Uniform Commercial Code and G.L.c. 93A, § 11 provide remedies, albeit different remedies, for bad faith in the course of business dealings. See id. (foreclosure of a mortgage on an actual default, if motivated by bad faith, may be actionable conduct under G.L.c. 93A, § 11 even though evidence of motive is irrelevant to a common law claim of wrongful foreclosure). This Court finds that the modification or attempted modification of a contract in bad faith among persons engaged in trade or commerce may constitute an unfair act or practice and therefore be actionable under G.L.c. 93A, §11, just as it would be actionable under G.L.c. 106, §2-209 in a commercial transaction.
Applying this principle to the allegations in the instant complaint, the plaintiffs essentially allege that The Globe has attempted in bad faith to modify their contract by threatening to fire them unless they agree to waive their claim to contingent compensation already earned — the compensation they are due for previous work published in electronic media without their permission if the Supreme Court upholds the Second Circuit’s interpretation in Tasini of the Copyright Act of 1976. This contingent benefit is analogous to a salesman’s commission in that it is money owed for work already performed; the freelancer has already earned this money and need do no additional work to become entitled to payment if the contingency is met. The primary difference is that, unlike a salesman’s commission, it is contingent upon a ruling of the Supreme Court of the United States. This contingency, however, is purely exogenous — it does not depend on what the principal or independent contractor will do, but only on what a third party (the Supreme Court) will do. It is therefore most analogous to a salesman’s commission where the buyer has a right to cancel the order. Just as it may be bad faith for an employer to fire a salesman in order to avoid the possibility of having to pay the commissions on such an order, so, too, may it be bad faith for an employer to threaten the salesman with termination unless he agrees to modify his contract by waiving this commission. If it may be bad faith for an employer to act this way towards a salesman employee, it may also be bad faith for a company to act this way towards an independent contractor. Therefore, this Court finds that, depending on the circumstances, the modification of a contract may be in bad faith when it is procured through an ultimatum in which a company threatens an independent contractor, even an independent contractor who is terminable at-will, with termination unless that independent contractor agrees to waive any claim to a benefit the independent contractor has earned or is otherwise entitled to receive through its past service on behalf of that company.
In view of this legal conclusion, The Globe’s motion to dismiss, premised on the plaintiffs’ alleged failure to state a claim under G.L.c. 93A, §11, must be denied. This Court may not dismiss a claim “unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. at 98; Coughlin v. Department of Correction, 43 Mass.App.Ct. 809, 815-17 (1997) (lack of discovery places court in “unfortunately abstract posture” in considering motion to dismiss). It is impossible for this Court to have such certitude at this stage of the litigation, because:
“unfair or deceptive conduct is best discerned ‘from the circumstances of each case,’ ” Kattar v. Demoulas, 433 Mass. at 14 quoting Commonwealth v. DeCotis, 366 Mass. at 242;
the decisions of the Supreme Judicial Court “have recognized a distinction between the loss of future wages for past service . . . and the loss of future income for future services.” Gram I, 384 Mass. at 672; and
The Globe’s ultimatum is, at best, a heavy-handed way to treat the freelancers whose work it has long published.
This Court recognizes that The Globe’s conduct may not ultimately be found to be in bad faith — that the ultimatum may be found to conform to the reasonable commercial standards of fair dealing in the trade and not be deemed the extortion of a modification without legitimate commercial reason. This Court also recognizes that it is not clear what remedy may be appropriate under G.L.c. 93A if The Globe’s attempt at modification of the freelancers’ contract is deemed an unfair act or practice. The Globe can certainly not be required to publish the freelancers’ work or to maintain a business relationship with them. Indeed, it may be that the only relief that is appropriate is declaratory or injunctive: (1) permitting The Globe to terminate its relationship with any freelancer but barring it in the future from threatening any freelancer with termination for refusing to relinquish all rights to compensation under Tasini for previously published work, and (2) refusing to enforce this part of the License Agree *195 ment for those who executed it as a result of this threat. These issues, however, are not appropriately resolved on a motion to dismiss and are best left for later stages of this litigation.
ORDER
For the reasons stated above, the defendant’s motion to dismiss is DENIED.

 It should be noted that, under the terms of the proposed License Agreement, the non-exclusive license The Globe sought to obtain was limited to inclusion of the work in media where the work is “marketed and/or grouped under The Globe’s name or brand.”

 Subsequently, the Supreme Judicial Court held that such conduct, even if not done for the purpose of depriving the agent of commissions, still violates the implied covenant of good faith and fair dealing if it results in the agent’s loss of compensation already earned. Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 672 (1981) (“Gram I").

 This Court recognizes that, in addition, these two plaintiffs make the more traditional argument-that their consent to waive this right was obtained by misrepresentation.