NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1488

COMMONWEALTH

vs.

ANTONIO R. MARIN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of carrying a firearm without a license, G. L. c. 269, § 10 (a), possession of ammunition without a firearm identification (FID) card, G. L. c. 269, § 10 (h) (1), and discharging a firearm within 500 feet of a building, G. L. c. 269, § 12E.  He raises four issues on appeal.  We affirm.

Background.  In the early evening of July 4, 2020, a police officer received a radio dispatch from members of the fire department, who reported that a man had walked into the firehouse to report nearby gunfire.  On arrival at the scene, the police officer spoke to a witness who had recorded a video on his cell phone showing a man in a yellow polo shirt racking

the slide of a gun and firing the gun into the air. The witness said that the man in the video footage was his neighbor. After watching the video recording and making a copy using his own cell phone, the officer saw a man walking down a driveway with his hands up. That man, the defendant, was wearing the same clothing as the man in the video recording. Officers arrested the defendant and handcuffed him. As the situation progressed, at least seven police officers were present.

After the defendant's arrest, a Spanish-speaking police officer asked the defendant if he was willing to speak.[1] The defendant said yes, and the Spanish-speaking officer read him a Miranda warning in Spanish. The defendant told the officers, as translated by the Spanish-speaking officer, something to the effect of "the firearm is going to be in the backyard near the tire." A lieutenant searched the tire of the defendant's camping trailer and found a handgun and a loaded magazine. Officers found what appeared to be a bullet hole in a house across the street, as well as several live and spent rounds of ammunition on the ground near where the video footage was recorded. After the defendant was booked at the jail, officers found two live .25 caliber bullets in his pocket. The

---

[1] The defendant spoke only Spanish.

ammunition matched the caliber of the gun found on the tire of the trailer.

Discussion.  1. Rule 36.  The defendant argues that the judge erred in denying his motion to dismiss under Mass. R. Crim. P. 36 (b), 378 Mass. 909 (1979) (rule 36).  Under rule 36, "a criminal defendant who is not brought to trial within one year of the date of arraignment is presumptively entitled to dismissal of the charges unless the Commonwealth justifies the delay."  Commonwealth v. Dirico, 480 Mass. 491, 497 (2018), quoting Commonwealth v. Spaulding, 411 Mass. 503, 504 (1992).  If a defendant has not been brought to trial within one year of arraignment, he has established a prima facie violation of rule 36.  Commonwealth v. Graham, 480 Mass. 516, 522-523 (2018).  The burden then shifts to the Commonwealth to justify the delay.  Id.  The Commonwealth can meet that burden in two ways.  First, it can show that the time falls under an excluded period under rule 36 (b) (2).  Id. at 517.  Second, it can show that "the defendant acquiesced in, was responsible for, or benefited from the delay."  Id., quoting Spaulding, supra.

Since 1,156 days elapsed between the defendant's arraignment on July 6, 2020, and the start of his trial on September 5, 2023, the Commonwealth bears the burden to justify at least 791 days to avoid dismissal.  On appeal, we accept the judge's findings of fact absent clear error where those findings

3

rest on the judge's evaluation of witness credibility and the judge's recollection of the proceedings. Dirico, 480 Mass. at 496. Where the judge's findings depend solely on the docket, the clerk's minutes, and record evidence, "[w]e are in as good a position as the judge below to decide whether the time limits imposed by the rule have run." Id., quoting Commonwealth v. Denehy, 466 Mass. 723, 730 (2014).

a. July 7, 2020, to October 5, 2021. The Commonwealth argues that 456 days from this period are excluded due to the Supreme Judicial Court's emergency orders on the Covid-19 pandemic. See Supreme Judicial Court, Seventh Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the Covid-19 (Coronavirus) Pandemic, No. OE-144 (July 12, 2021), rescinded by Supreme Judicial Court, Order In Re: Covid-19 (Coronavirus) Pandemic, No. OE-144 (Nov. 1, 2023). We agree. All time until October 5, 2021, was excludable from speedy trial calculations under rule 36 due to the Supreme Judicial Court's orders. See Commonwealth v. Lougee, 485 Mass. 70, 77-78 (2020).

The defendant argues that the trial judge was bound by the bail hearing judge's ruling that only twenty-one days prior to November 2, 2020, were excludable. We disagree for two reasons. First, the bail hearing occurred in the context of G. L. c. 276, § 58A, under which the Commonwealth moved to detain the

4

defendant pretrial based on dangerousness.  The statute requires that detention by the District Court not exceed 120 days, "excluding any period of delay as defined in [rule 36 (b) (2)]." G. L. c. 276, § 58A (3).  It is apparent from the transcript that the hearing judge's calculations were made for the purposes of § 58A, not rule 36.

Second, regardless of whether the hearing judge's rulings pertained to § 58A or rule 36, the trial judge retained the authority to revise those rulings and correct errors. "Massachusetts courts have recognized that 'it is within the inherent authority of a trial judge to "reconsider decisions made on the road to final judgment."'" Commonwealth v. Charles, 466 Mass. 63, 83 (2013), quoting Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 401 (2003).  See also Peterson v. Hopson, 306 Mass. 597, 601-602 (1940) (although judge not obligated "to reconsider a case, an issue, or a question of fact or law, once decided, the power to do so remains in the court until final judgment or decree").  This applies in the context of rule 36.  See Commonwealth v. Moore, 20 Mass. App. Ct. 1, 3 n.4 (1985) (assuming judge had power to revise motion judge's rule 36 calculations where erroneous). The defendant relies on the "law of the case" doctrine to argue that the trial judge should have deferred to the hearing judge's

ruling.[2]  The law of the case doctrine reflects a reluctance to reconsider issues already decided in the same case.  See King v. Driscoll, 424 Mass. 1, 7-8 (1996).  But see Goulet v. Whitin Mach. Works, Inc., 399 Mass. 547, 554 (1987) (trial judge able to revise pretrial judge's ruling).  The law of the case doctrine is a permissive, not a mandatory, doctrine.  Potter v. John Bean Div. of Food Mach. & Chem. Corp., 344 Mass. 420, 427 (1962); Vittands v. Sudduth, 49 Mass. App. Ct. 401, 413 n.19 (2000).  The trial judge did not abuse her discretion in declining to apply the doctrine and correcting an erroneous ruling.  See King, supra at 8, quoting United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir.), cert. denied, 502 U.S. 862 (1991) ("[a]n issue 'once decided, should not be reopened "unless . . . the decision was clearly erroneous and would work a manifest injustice"'").  We agree that the Commonwealth has met its burden of justifying these 456 days.  This means that

---

[2] The defendant refers interchangeably to the law of the case doctrine and direct estoppel.  These are distinct doctrines.  See Commonwealth v. Clayton, 63 Mass. App. Ct. 608, 610-611 (2005) (prior decision did not work direct estoppel but did become law of case).  We note briefly that direct estoppel is inapplicable on these facts because direct estoppel requires a final judgment of conviction.  Id. at 610.  See Commonwealth v. Rodriguez, 443 Mass. 707, 710 (2005) (in criminal context, direct estoppel requires that issue was actually litigated and determined, determination was essential to defendant's conviction, and defendant had opportunity to obtain review of determination).

the Commonwealth must justify an additional 335 days to avoid dismissal.

b. October 6, 2021, to February 9, 2022. The parties disagree as to how much of this time period is excludable. The defendant argues that only twelve days should be excluded due to the Commonwealth's failure to comply with automatic discovery. Namely, the defendant argues that the Commonwealth failed to turn over evidence that an investigating officer used drugs. The Commonwealth argues that ninety-eight days are excluded because it complied with its discovery obligations and because the defendant acquiesced to the delay by failing to file motions and press his case. On this record, we agree with the Commonwealth.

At a hearing on October 5, 2021, the defendant asked for a new hearing date for his motion for discovery pursuant to Mass. R. Crim. P. 14, as appearing in 442 Mass. 1519 (2004) (rule 14).[3] The defendant sought discovery related to an investigating officer's alleged use of unprofessional language and drugs. After a hearing on November 5, 2021, the judge took no action on the motion. She reasoned that the discovery sought was not rule

_____

[3] Although the hearing took place on October 5, the record is ambiguous when the defendant filed his motion. The motion is dated and was served on September 29, 2021, and the docket entry reads October 11, 2021.

discovery, and she held that the defendant would have to file a motion under a different procedural rule if he wanted to proceed. Ultimately, at a hearing on January 11, 2022, the Commonwealth divulged that the officer in question was serving a suspension in connection with drug use. A different judge again took no action on the defendant's discovery motions pending the Commonwealth providing the necessary disclosures. The parties agree that the days between January 11, 2022, and February 9, 2022, are included. Their disagreement pertains to the ninety-eight days between October 5, 2021, and January 11, 2022.

The defendant argues that he cannot be made to choose between vindicating his rule 36 speedy trial right and obtaining exculpatory evidence. We disagree that the defendant faced this dilemma. The defendant could have preserved both rights by filing a motion to compel discovery or a motion for sanctions. See Commonwealth v. Taylor, 469 Mass. 516, 526 (2014) (to toll speedy trial clock, defendant must combat rule 14 violation by filing motion for sanctions or motion to compel). He did neither. See Commonwealth v. Bourdon, 71 Mass. App. Ct. 420, 426 (2008), quoting Commonwealth v. Fling, 67 Mass. App. Ct. 232, 236 (2006) ("[a] defendant cannot sit by passively, but must make sure tha[t] an objection to a specific continuance is

timely noted").[4]  We agree that ninety-eight days should be excluded.  This leaves the Commonwealth with the burden to justify 237 additional days.

c.  February 9, 2022, to September 5, 2023.  On February 9, 2022, the defendant withdrew his discovery motion after the Commonwealth provided him with the discovery he requested.  The parties agreed on a date of May 12, 2022, for a hearing on the defendant's motion to suppress.  On April 12, however, the defendant agreed to the Commonwealth's request to continue the hearing until May 25.  That the defendant acquiesced to the delay means that the preceding period of 105 days is excluded from rule 36 calculations.  See Graham, 480 Mass. at 529 ("a defendant is not entitled to dismissal if he or she acquiesced in, was responsible for, or benefited from the delay").

The defendant argues that it was incumbent on the judge to make findings as to whether the speedy trial clock was tolled, and that absent such findings, the time should be included.  In fact, it was incumbent on the defendant to object to the continuance if he wanted to press his right to a speedy trial.  See Commonwealth v. Lauria, 411 Mass. 63, 68 (1991), quoting Barry v. Commonwealth, 390 Mass. 285, 297 (1983) ("defendants

---

[4] Of course, the Commonwealth also has a duty to move a case along expeditiously.  See Graham, 480 Mass. at 530 ("rule 36 imposes obligations on all parties").

9

have a responsibility to 'press their case through the criminal justice system'").

On August 18, 2022, the defendant's request for a continuance was allowed, and the motion to suppress was continued until October 27, 2022. These seventy days are excluded. See Dirico, 480 Mass. at 498-499. On October 27, 2022, the defendant was granted a continuance until December 9, 2022. On December 8, 2022, the court administratively allowed an assented-to motion to advance and continue until February 17, 2023. As the defendant requested or agreed to these delays, the ensuing 113 days are properly excluded.

This period of time adds 288 excluded days to the calculation. In total, the Commonwealth has justified more than the 791 days. We conclude that the motion judge did not err because the Commonwealth met its burden to justify the delay, and we need not review the remainder of the time that the parties dispute.

2. Motion to suppress. The defendant argues that the motion judge erred in denying his motion to suppress the gun, ammunition, and his statements regarding the gun. He argues that the defendant's statement telling officers where they would find the gun did not unambiguously convey consent to search. Alternatively, he argues that the defendant's consent was not voluntarily given.

10

As a threshold issue, we must determine the applicable standard of review. In support of his motion below, the defendant argued that he did not unambiguously consent to the search. On appeal, the defendant raises the additional issue of the voluntariness of his consent, in the context of coercion and intoxication. Since the defendant did not raise the voluntariness issue below, that issue is waived. Commonwealth v. Dew, 478 Mass. 304, 309 (2017). We nonetheless review the voluntariness issue for a substantial risk of a miscarriage of justice. Id. at 309-310. See Commonwealth v. Santos, 95 Mass. App. Ct. 791, 796-798 (2019) (when defendant raises claim for first time on appeal that should have been included in motion to suppress, most common approach appellate court takes is to review issue for substantial risk of miscarriage of justice as long as record is sufficient).

a.  Consent.  For a consent search to be valid absent a warrant, the consent must be voluntarily given without coercion. Commonwealth v. Rogers, 444 Mass. 234, 237 (2005). The Commonwealth bears the burden of proving that consent was voluntarily given. Commonwealth v. Alleyne, 474 Mass. 771, 783 (2016). The voluntariness of consent is a question of fact. Id. "In reviewing a ruling on a motion to suppress, 'we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [the judge's] ultimate findings

11

and conclusions of law.'" Commonwealth v. Sweeting-Bailey, 488
Mass. 741, 745 (2021), quoting Commonwealth v. Tremblay, 480
Mass. 645, 652 (2018).

We agree with the Commonwealth and the motion judge that
when the defendant told officers where they will find the gun
near the tire of the trailer, which was an area accessible to
others who approached the trailer, he consented to the search.
See Commonwealth v. Rousseau, 61 Mass. App. Ct. 144, 153-154
(2004) (suspect who directed officer to car compartment
containing burglarious tools impliedly gave officer consent to
search compartment). The defendant volunteered this statement;
he was not responding to any question or prompt from officers.
Even the phrasing of the statement points to consent. The
defendant's references to the future -- "the firearm is going to
be in the backyard near the tire" -- contemplate that officers
will search near the tire for the gun.

b. Voluntariness. The defendant points to several factors
that he argues created an inherently coercive situation.
Namely, the defendant was handcuffed and sitting in the back of
a police van -- a situation the motion judge referred to as
"clearly constitut[ing] a custodial interrogation."[5] Moreover,

---

[5] The Spanish-speaking officer read the defendant a Miranda
warning before he made his statement. The defendant argues that
reading a Miranda warning does not render consent voluntary. We
agree with this proposition, although for reasons explained

12

the defendant highlights that he was intoxicated at the time and was surrounded by at least seven police officers. Additionally, there was a language barrier, as the defendant only spoke Spanish. Lastly, he argues that an officer's remark that if he was cooperative, that cooperation would be documented, rendered the defendant's statement involuntary.

Under these circumstances, the defendant's consent was voluntary. The first two factors the defendant highlights are of little weight. See Commonwealth v. Harmond, 376 Mass. 557, 561-562 (1978) ("Although the presence of several uniformed officers or the impairment of the defendant's understanding by reason of drinking may suggest the absence of consent, neither fact alone necessarily compels such a finding"). One officer testified that the defendant's eyes were glassy, his gait unsteady, and his speech slurred. This testimony by itself does not render the motion judge's findings clearly erroneous. Cf. Alleyne, 474 Mass. at 783 (defendant's consent voluntary where he was "somewhat intoxicated, calm, cooperative," and was able to respond to and understand questions). The defendant's language barrier is also of little weight, given that he could communicate with the Spanish-speaking officer.

_____

infra, under the circumstances in this case, the defendant's consent to search was voluntarily given.

13

The defendant relies on Rogers, 444 Mass. at 239-240, but Rogers is distinguishable, as that case involved police officers asking questions to learn where a defendant was hiding. Here, the defendant did not respond to any questions regarding the gun but volunteered his statement unprompted. Absent any questioning, the inherently coercive situation described in Rogers did not exist here. Lastly, we note that the officer's statement that cooperation would be noted was not improper.

> "An officer may suggest broadly that it would be 'better' for a suspect to tell the truth, may indicate that the person's cooperation would be brought to the attention of the public officials or others involved, or may state in general terms that cooperation has been considered favorably by the courts in the past."

Commonwealth v. Meehan, 377 Mass. 552, 564 (1979). There was no promise of reward or leniency. See id. ("What is prohibited, if a confession is to stand, is an assurance, express or implied, that it will aid the defense or result in a lesser sentence"). We do not discern a substantial risk of a miscarriage of justice.

3. Authentication of the video recording. The defendant contends that the trial judge erred in admitting the video recording on the ground that the video was not properly authenticated. We disagree.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce

14

evidence sufficient to support a finding that the item is what the proponent claims it is." Commonwealth v. Davis, 487 Mass. 448, 465 (2021), quoting Mass. G. Evid. § 901(a) (2021). A video recording is typically authenticated by one of two means -- "having an eyewitness testify that the video is a fair and accurate representation of what he saw on the day in question, or having someone testify about the surveillance procedures and the methods used to store and reproduce the video material." Davis, supra at 465-466, quoting Commonwealth v. Connolly, 91 Mass. App. Ct. 580, 586 (2017). Additionally, as here, "[e]vidence may be authenticated by circumstantial evidence alone, including its '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics.'" Davis, supra at 466, quoting Commonwealth v. Siny Van Tran, 460 Mass. 535, 546 (2011). We review the trial judge's evidentiary rulings for an abuse of discretion. Commonwealth v. Gibson, 489 Mass. 37, 45 (2022).

Here, the witness who filmed the video footage could not be summoned to testify at trial. The Commonwealth laid a foundation for the video footage through the officer who recorded a copy of the witness's cell phone video. The officer testified that the witness had shown him a video recording the witness had taken that captured the gunfire. Circumstantial evidence offered strong support that the video footage was

15

authentic.  The video recording, which is part of the record on appeal, shows a man wearing a yellow polo shirt, a brown belt, and black pants rack the slide of a small handgun and fire it into the air.  The officer testified that at the time of the defendant's arrest, he was wearing the same clothing shown on the video footage.  The officer responded "three to four" minutes after dispatch and watched the video recording with the witness upon arrival.  Police recovered spent and unspent ammunition on the ground near where the defendant was firing the gun on the video recording.  The officer also found "a bullet hole in the house across the street."  Police found ammunition in the defendant's pockets that matched the caliber of the firearm that was recovered.  This circumstantial evidence amply authenticated the video recording and showed that the video was taken shortly before the police arrived.

The defendant argues that the lack of a timestamp on the video recording is fatal to authentication.  But a timestamp is not needed to authenticate a video recording where other circumstantial evidence of authenticity exists.  See Davis, 487 Mass. at 466, 467 n.23.  In Davis, supra at 450, as here, an officer made a cell phone recording of another video recording. The recording lacked a time stamp for most of its duration, and when the time stamp was visible, it was inaccurate.  Id. at 467 n.23.  Nonetheless, as here, circumstantial evidence

16

authenticated the video.  Id. at 466 (witness testimony and physical evidence that corroborated contents of video recording constituted circumstantial evidence of video's authenticity).  Moreover, the officer in Davis, supra at 467, as here, viewed the surveillance video recording immediately after the crime, which alleviated any concern that the video could have been altered.  The judge did not abuse her discretion.

4.  Sufficiency of the evidence.  The defendant challenges the legal sufficiency of the evidence supporting his convictions of carrying a firearm without a license and possession of ammunition without an FID card.  Specifically, he argues that the evidence at trial was insufficient to establish that he lacked a firearms license at the time of the offenses.  We review the legal sufficiency of the evidence under the Latimore standard, namely, "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted).  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

To prove that the defendant carried a firearm without a license, the Commonwealth bears the burden of proving beyond a reasonable doubt that the defendant lacked a firearms license at the time of the offense.  Commonwealth v. Guardado, 491 Mass. 666, 690, S.C., 493 Mass. 1 (2023), cert. denied, 144 S. Ct.

17

2683 (2024). At trial, an employee of the Department of Criminal Justice Information Services (DCJIS) testified that when a Massachusetts resident applies for a firearms license, the applicant interviews with a firearms licensing officer, who enters the application into the Massachusetts instant record check system (MIRCS). The employee explained that another database, known as the criminal justice information system (CJIS), draws all its information from MIRCS. She testified that in September 2023, she searched the defendant's name in MIRCS, which produced a "No Record" result. She agreed with the prosecutor that a "No Record" result means that "there was no record of [the defendant] possessing a license to carry a firearm in Massachusetts." She further explained that "[t]here was no license history for that name and date of birth."

In the light most favorable to the Commonwealth, this testimony was sufficient to establish that the defendant lacked a firearms license at the time of the offenses in July 2020. The defendant argues that the employee's testimony only establishes that the defendant lacked a firearms license as of September 2023. The Commonwealth's witness testified that there was "no record of [the defendant] possessing a license to carry a firearm in Massachusetts," and that, critically, "[t]here was no license history" (emphasis added). This testimony sufficed to establish that the defendant could not have possessed a

18

license in July 2020 if there was no license history in the CJIS database as of September 2023.

Judgments affirmed.

By the Court (Henry, Sacks & Singh, JJ.[6]),

Clerk

Entered: May 16, 2025.

---

[6] The panelists are listed in order of seniority.