NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12428
SJC-12433

COMMONWEALTH  vs.  KEVIN GRAHAM, JR.
(and five companion cases[1]).


Suffolk.     April 2, 2018. - September 13, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Constitutional Law, Speedy trial.  Practice, Criminal, Speedy trial, Dismissal.  Witness, Unavailability.  Evidence, Failure to prosecute.


Indictments found and returned in the Superior Court Department on June 10, 2016.

Motions to dismiss were heard by Douglas H. Wilkins, J.

The Supreme Judicial Court granted applications for direct appellate review.


Sarah Montgomery Lewis, Assistant District Attorney (Masai-Maliek King, Assistant District Attorney, also present) for the Commonwealth.
Patrick Levin, Committee for Public Counsel Services, for Kevin Graham, Jr.
Claudia Leis Bolgen for Ellis Golden.

_____

[1] Two against Kevin Graham, Jr., and three against Ellis Golden.

William M. Jay & Gerard J. Cedrone, of New York, & Chauncey B. Wood & Kevin P. Martin, for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

GANTS, C.J.  Rule 36 of the Massachusetts Rules of Criminal Procedure, as amended, 422 Mass. 1503 (1996) (rule 36), provides that, if a criminal defendant is not tried "within twelve months" after arraignment, "he shall be entitled upon motion to a dismissal of the charges."  Mass. R. Crim. P. 36 (b) (1) (C). A defendant may establish a prima facie violation of rule 36 by demonstrating that more than twelve months have elapsed between arraignment and trial.  See Commonwealth v. Denehy, 466 Mass. 723, 729 (2014).  The burden then shifts to the Commonwealth to justify the delay, either by showing that it falls within one of the "excluded periods" enumerated under rule 36 (b) (2) or by showing that "the defendant acquiesced in, was responsible for, or benefited from the delay."  Commonwealth v. Spaulding, 411 Mass. 503, 504 (1992).  "A failure to object to a continuance or other delay constitutes acquiescence."  Commonwealth v. Tanner, 417 Mass. 1, 3 (1994).

The defendants in these companion cases, Kevin Graham, Jr., and Ellis Golden, were indicted for murder in the first degree. At arraignment, a presumptive trial date was set for June 12, 2017.  Thereafter, the parties also scheduled various pretrial events, such as motion hearings and status conferences, but the

presumptive trial date did not change, and the trial was never continued. On June 12, the Commonwealth was not ready for trial because of the unavailability of an essential out-of-State witness. The Commonwealth moved to continue the trial so that it would have more time to secure the witness's appearance at trial. The judge denied the motion to continue, finding that the Commonwealth had failed to exercise due diligence in securing the witness's appearance, but agreed to empanel a jury and commence trial one week later if the Commonwealth were able to produce the witness. The Commonwealth was unable to do so.

The defendants subsequently moved to dismiss, as more than one year had elapsed since their arraignments. The Commonwealth opposed the motions, arguing that much of that time should be excluded from the rule 36 calculation, because the defendants had failed to object when the various pretrial events were scheduled and, therefore, had acquiesced in the delay. The judge allowed the motions to dismiss with prejudice on two separate grounds. He concluded that the defendants' right to a speedy trial under rule 36 had been violated, because the defendants could not have acquiesced in any delay where the presumptive trial date never changed. He also concluded that the defendants were entitled to dismissals for the Commonwealth's failure to prosecute.

We vacate the dismissals and remand the cases for trial. We conclude that the judge effectively continued the trial for one week and that, because an essential witness resisted appearing at trial, this period should be excluded under rule 36 (b) (2) (B) or (F), placing the Commonwealth within the time limits of rule 36.  We also conclude that the judge abused his discretion in dismissing the indictments for failure to prosecute where the Commonwealth's lack of diligence in producing the witness did not rise to the level that would warrant dismissal, especially where the indictments are for murder, where barely one year had passed since the defendants' arraignments, and where the trial had been continued for only one week.

We also hold that time can be excluded under rule 36 based on a defendant's acquiescence only where the defendant has agreed to or failed to object to a continuance or other delay, and that the scheduling of an event alone does not constitute delay.  Thus, a defendant need not object every time an event is scheduled in order to preserve his or her rights under rule 36. We further hold that, where the defendant has acquiesced, a

delay can be excluded under rule 36 even where it does not affect the presumptive trial date.[2]

Background.  We summarize the facts as found by the motion judge, supplemented with uncontroverted evidence that was implicitly credited by the judge and is consistent with his ultimate findings.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  We also summarize the prior proceedings, as recorded in the docket and the clerk's minutes.  See Commonwealth v. Roman, 470 Mass. 85, 93 (2014) ("For purposes of a rule 36 calculation . . . , the docket and the clerk's log are prima facie evidence of the facts recorded therein").

In the early morning hours of August 12, 2004, Thomas Hawkins (victim) was shot and killed, and his wallet stolen. The police recovered the victim's wallet from a nearby school yard later that day; according to the Commonwealth, the wallet was empty, apart from some personal papers.

The police investigation was unable to identify any material leads in the case until December, 2006, when Juan Garcia offered to provide the police with information about the killing in return for consideration in his pending narcotics case.  No agreement was reached at that time with Garcia, and he was subsequently tried and convicted.

---

[2] We acknowledge the amicus brief submitted by the Massachusetts Association of Criminal Defense Lawyers.

However, in 2007 Garcia met with the police again and agreed to testify before a grand jury. In his grand jury testimony, Garcia stated that, at the time of the killing, he heard gunshots and observed two men -- whom he knew and identified as the defendants -- fleeing from the area where the victim's body was found. He also testified that he saw the defendants passing a wallet between themselves, and that Graham was holding a firearm. Garcia told the grand jury that he was cooperating with the Commonwealth in exchange for its support of his motion to revise and revoke the sentence he was serving in his narcotics case. However, no indictments were returned by that grand jury against the defendants, and the Commonwealth apparently did not provide Garcia with the assistance he anticipated.

In 2015, another grand jury was convened to investigate the killing. Because Garcia was then living in Florida, the Commonwealth read his prior grand jury testimony into the record rather than call him to testify. On June 10, 2016, the grand jury indicted the defendants for murder in the first degree, as well as armed robbery and unlawful possession of a firearm.

The Commonwealth's case rested heavily on the testimony of Garcia, the sole identification witness.[3]  The Commonwealth had no forensic evidence identifying either defendant as the perpetrator of the crimes.

Golden was arraigned on June 20, 2016, and Graham on June 22, 2016.  Pursuant to Superior Court Standing Order 2-86, all criminal cases in the Superior Court are required to be assigned to a "case track" at arraignment, thereby establishing a presumptive timeline for disposition of the case.  See Superior Court Standing Order 2-86, Part III (2009).  The defendants' cases were designated as "C" track cases, with the following presumptive schedule:  a pretrial conference on July 14, 2016; a first pretrial hearing on December 13, 2016; a final pretrial hearing on June 1, 2017; and a presumptive trial date of June 12, 2017.[4]

The pretrial conference and first pretrial hearing were held as scheduled.  On May 11, 2017, the Commonwealth filed its first motion to continue the presumptive trial date, stating

---

[3] According to the Commonwealth, two other individuals confirmed to the police that Garcia was where he said he was at the time of the shooting, but neither offered any information regarding the identities of the persons involved in the killing.

[4] Cases are assigned to tracks "A", "B," or "C" based on the offense charged in the indictment, and on consideration of any extenuating or special circumstances raised by the parties. Murder cases are presumptively assigned to track "C." Superior Court Standing Order 2-86, Part III (2009).

that it needed more time to test deoxyribonucleic acid (DNA) evidence found in the victim's shorts.  The motion was denied.

The final pretrial hearing was held as scheduled, on June 1, 2017, and the presumptive trial date of June 12 was confirmed as the actual trial date.  On June 8, the Commonwealth informed the court room clerk that it was unable to proceed to trial because it could not secure Garcia's attendance.  At a hearing on June 9, the Commonwealth stated that it would file a motion to continue, which it did on June 12, the trial date.

In its motion to continue, the Commonwealth made the following factual representations:  Although members of the Boston police department had been "in regular contact" with Garcia since 2015, their last communication with Garcia had been in April, 2017.  Once the Commonwealth's first motion to continue was denied on May 11, 2017, the police attempted later that month to contact Garcia to secure his attendance at trial. After several unsuccessful attempts to communicate with Garcia by telephone, the police decided to send an officer to Florida on June 7, but the officer was unable to locate Garcia.  On the afternoon of June 8, the officer received a telephone call from Garcia, who, in "a curse laden tirade," accused the officer of

going to his workplace and of "harassing" his family members.[5] Garcia then told the officer that he did not "want to be bothered any longer regarding these matters."[6]

After a nonevidentiary hearing, the judge denied the motion to continue. The judge found that the Commonwealth had failed, "despite clear warning signs," to compel Garcia's attendance through interstate process and that it had therefore failed to exercise due diligence in producing a material witness. However, although he denied the motion to continue, the judge scheduled a "status conference" for June 19, and declared that he would empanel a jury and commence trial on that date if the Commonwealth were "ready to go."

Following the hearing on June 12, the Commonwealth contacted a Florida State Attorney's office in an attempt to effectuate the interstate process that the judge had approved. An investigator for that office went to Garcia's address on June 15 but was unable to serve him; the investigator said he spoke

---

[5] The Commonwealth maintains that the police officer did not go to Garcia's workplace. The Commonwealth has represented that, in attempting to locate Garcia, the officer told persons associated with Garcia only that he was "a friend of his from Boston."

[6] On June 16, 2017, the prosecutor submitted an affidavit that reiterated these factual representations. The judge did not make any factual findings whether these representations were true but found that he did not need to, because he would deny the motion even were he to accept them as true.

with someone who indicated that Garcia lived there but was not there at the time.  On June 15, Boston police received a telephone call from Garcia, who said, "Leave me the fuck alone; fuck you," and then hung up the telephone.

On June 19, the prosecutor informed the judge that the Commonwealth was not ready for trial because it was still searching for Garcia.  The prosecutor made an oral motion to continue, which the judge denied.

On June 22, 2017, 367 days after his arraignment, Golden filed a motion to dismiss for violation of rule 36 and for failure to prosecute.  On June 26, 369 days after his arraignment, Graham filed a similar motion.  In opposing these motions, the Commonwealth made two arguments.  First, the Commonwealth argued that it had exercised due diligence in attempting to secure Garcia's attendance at trial, noting that Garcia had been "actively avoiding" being located and served.  Second, the Commonwealth argued that almost all of the time that had elapsed since the defendants' arraignments should be excluded under rule 36, because the defendants, in failing to object to the scheduling of various pretrial events, had acquiesced in the delay.  With respect to this second argument, the Commonwealth rested solely on "waiver and acquiescence"; it

did not argue that any time should be excluded because it fell within an "excluded period" under rule 36 (b) (2).[7]

The judge allowed the rule 36 motion, dismissing the indictments against both defendants with prejudice.  The judge concluded that, because there had been no change to the presumptive trial date, there was no time that could be excluded, whether under rule 36 (b) (2) or based on the defendants' acquiescence.[8]  The judge also allowed the defendants' motions to dismiss for failure to prosecute.  He declared that the "crucial" factor in this decision was the Commonwealth's failure to exercise due diligence in securing Garcia's attendance at trial, combined with what he characterized as the unlikelihood that the Commonwealth "will

---

[7] At the hearing on the defendants' motions to dismiss, the judge asked the prosecutor, "Are there any specifically enumerated events in [rule 36 (b) (2)] that you are relying on, or is it just waiver and acquiescence?" to which the prosecutor replied, "It's waiver and acquiescence, Your Honor."  Moreover, in its oppositions to the defendants' motions to dismiss, the Commonwealth argued only that time should be excluded based on "the defendant's agreement to, acquiescence in, or benefit from the delay." In its charts accompanying its oppositions, where the Commonwealth detailed its calculations of time under rule 36, it made no mention of any excluded periods under rule 36 (b) (2).

[8] The judge rested his dismissal for lack of a speedy trial solely on rule 36 grounds; the judge did not find a constitutional speedy trial violation, and the defendants make no constitutional claim.  If the defendants had made such a claim, we would be obliged to consider it even though we conclude that there was no rule 36 violation.  See Commonwealth v. Dirico, 480 Mass.    ,     (2018).

improve its lackluster efforts to date or exercise due diligence to produce an increasingly hostile witness." He also declared that the dismissals for failure to prosecute would have been without prejudice "[b]ut for the rule 36 violation."

The Commonwealth filed a notice of appeal in these cases, and we granted the defendants' applications for direct appellate review.

Discussion. 1. Rule 36. Rule 36 is a "[case] management tool, designed to assist the trial courts in administering their dockets." Barry v. Commonwealth, 390 Mass. 285, 295-296 (1983), quoting Reporters' Notes to Mass. R. Crim. P. 36, Mass. Ann. Laws, Rules of Criminal Procedure, at 525 (1979). It also "creates a means through which [criminal] defendants who desire a speedy trial can secure one." Barry, supra at 296. Under rule 36, "a criminal defendant who is not brought to trial within one year of the date of arraignment is presumptively entitled to dismissal of the charges unless the Commonwealth justifies the delay." Spaulding, 411 Mass. at 504.[9] See Mass. R. Crim. P. 36 (b) (1) (C), (D). Dismissal under rule 36 is

---

[9] Rule 36 provides that "a defendant shall be tried within twelve months after the return day in the court in which the case is awaiting trial." Mass. R. Crim. P. 36 (b) (1) (C), as amended, 422 Mass. 1503 (1996). Where the defendant is under arrest, as here, the return day is the date of arraignment. See Mass. R. Crim. P. 2 (b) (15), as amended, 397 Mass. 1226 (1986). See also Commonwealth v. Mattos, 404 Mass. 672, 674 (1989).

with prejudice.  Commonwealth v. Lauria, 411 Mass. 63, 71 (1991).

Here, the defendants have established a prima facie violation of rule 36 because they were not brought to trial within twelve months of arraignment.  The burden therefore shifts to the Commonwealth to justify the delay.  Denehy, 466 Mass. at 729.  In Golden's case, the period between his arraignment on June 20, 2016, and the filing of his motion to dismiss on June 22, 2017, was 367 days; subtracting twelve months (i.e., 365 days) from this period leaves only two days that the Commonwealth must justify.  In Graham's case, the period between his arraignment on June 22, 2016, and the filing of his motion to dismiss on June 26, 2017, was 369 days, leaving only four days for the Commonwealth to justify.[10],[11]

There are two separate ways in which the Commonwealth can meet its burden of justifying a delay, thereby excluding it from the calculation of time under rule 36.

---

[10] The filing of a motion to dismiss under rule 36 tolls the running of the time in which the defendant must be tried.  Barry v. Commonwealth, 390 Mass. 285, 294 (1983).

[11] In making our calculations, we adhere to rule 36 (b) (3), which provides:  "In computing any time limit other than an excluded period, the day of the act or event which causes a designated period of time to begin to run shall not be included. Computation of an excluded period shall include both the first and the last day of the excludable act or event."  However, "[i]f there are excludable periods of delay which overlap, a day is excluded only once."  Barry, 390 Mass. at 292.

a.  Excluded periods under rule 36 (b) (2).  The first way to justify a delay is to show that the delay falls within one of the "excluded periods" specifically enumerated under rule 36 (b) (2).  Such periods include, for example, "delay[s] resulting from interlocutory appeals," "delay[s] resulting from hearings on pretrial motions," and "delay[s] . . . during which any proceeding concerning the defendant is actually under advisement."  Mass. R. Crim. P. 36 (b) (2) (A) (iv), (v), (vii).

The judge declared that no time could be excluded under rule 36 (b) (2) unless the act or event triggering the exclusion resulted in delay of the presumptive trial date.  This was error.  As we have consistently recognized, "once [the Commonwealth] establishes that an act or event triggers an excludable period of time [under rule 36 (b) (2)], the exclusion of the period is automatic."  Barry, 390 Mass. at 292.[12]  See Denehy, 466 Mass. at 729 n.6; Commonwealth v. Farris, 390 Mass. 300, 304 n.3 (1983).  Because there are a "multitude of factors [that] might influence the date a trial commences," the

---

[12] As stated in the Reporter's Notes to rule 36 (b) (2): "[T]he court is given the discretion to consider and determine whether a proffered explanation for delay is a valid excluded period.  But once it is determined that a period of delay is within the contemplation of [rule 36 (b) (2)], that period shall be excluded from computation of the twelve-month limit." Reporter's Notes to Mass. R. Crim. P. 36 (b) (2), Massachusetts Rules of Court, Rules of Criminal Procedure, at 210 (Thomson Reuters 2018).

Commonwealth need not establish whether that act or event had any effect on the trial date -- or, for that matter, the presumptive trial date. Barry, supra at 292-293. Rather, the exclusions identified in rule 36 (b) (2) are premised on the belief that certain acts or events are "certain to result in delay," or are "beyond [the Commonwealth's] control," such that any time that elapses as a result of those acts or events should not be counted against the Commonwealth. Reporter's Notes to Mass. R. Crim. P. 36 (b) (2), Massachusetts Rules of Court, Rules of Criminal Procedure, at 210-211 (Thomson Reuters 2018) ("The rationale underlying [rule 36 (b) (2)] is that the Commonwealth should not be penalized when the defendant elects to avail himself of those procedures"). The automatic exclusion of these time periods "allows all parties to calculate with reasonable certainty the date within which the defendant must be tried." Barry, supra at 292. If we were to exclude time under rule 36 (b) (2) only where an act or event is shown to have resulted in an actual delay of the presumptive trial date, the parties to a criminal case might not be able to calculate whether the allowable 365 days had elapsed until it was too late to avoid dismissal of the case.[13]

---

[13] Keeping a contemporaneous calculation of excludable delay under rule 36 (b) (2) is also important where a defendant, after a dangerousness hearing, is ordered to be held in pretrial

We reiterate, however, that the burden is on the Commonwealth to demonstrate that a delay should be excluded under rule 36 (b) (2). Denehy, 466 Mass. at 729. Here, the judge concluded that the Commonwealth had disclaimed reliance on rule 36 (b) (2). We agree that, because the Commonwealth did not specifically argue for exclusions under rule 36 (b) (2) when it opposed the defendants' motions to dismiss, see note 7, supra, most of these exclusions have been waived. The Commonwealth's waiver is of consequence because, for example, the Commonwealth could have sought to exclude the time required to hear and rule on the defendants' pretrial motions -- which, based on the record, could have been as much as thirty-two days in Golden's case[14] and forty-seven days in Graham's case[15] --

---

detention pending trial under G. L. c. 276, § 58A. Under § 58A (3), a person so detained "shall be brought to a trial as soon as reasonably possible, but in absence of good cause, the person so held shall not be detained for a period exceeding 120 days excluding any period of delay as defined in [rule 36 (b) (2)]."

[14] An excludable delay under rule 36 (b) (2) (A) (v) is calculated as the time between "the date on which the request for hearing on the pretrial motion is filed, or, if no such request is filed, from the date the hearing is ordered, until the conclusion of the hearing." See Reporter's Notes to Mass. R. Crim. P. 36 (b) (2) (A) (v), supra at 211.

The docket indicates that Golden filed a motion to dismiss on October 25, 2016, but does not indicate whether a request for hearing was filed. At the first pretrial hearing on December 13, 2016, a hearing on Golden's motion was scheduled for January 11, 2017. The hearing was held as scheduled, and the motion was

denied on January 13, 2017.  Assuming that there was no request for hearing and that the hearing was ordered at the first pretrial hearing, the Commonwealth could have sought to exclude the thirty days between December 13, 2016, and the motion hearing on January 11, 2017, under rule 36 (b) (2) (A) (v).  The Commonwealth could have also sought to exclude the two days between the hearing on January 11, 2017, and the ruling on January 13, 2017, when the matter was "under advisement," under rule 36 (b) (2) (A) (vii).

[15] The docket indicates that Graham filed a motion under Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004) (rule 14), for updated pretrial discovery on February 16, 2017, and that the motion was heard on March 23, 2017, but does not indicate when the hearing was requested or ordered.  Graham filed a second rule 14 motion on April 25, 2017; that same day, a motion hearing was scheduled for May 2, 2017.  That hearing was later rescheduled to May 11, 2017, when both motions were allowed.  As to the first motion, the Commonwealth could have sought to exclude thirty out of the fifty days between the motion hearing on March 23, 2017, and the ruling on May 11, 2017, when the matter was "under advisement," under rule 36 (b) (2) (A) (vii).  As to the second motion, the Commonwealth could have sought to exclude the seventeen days between when the hearing was scheduled on April 25, 2017, and when the hearing was held on May 11, 2017, under rule 36 (b) (2) (A) (v).

Having said that, because Graham's rule 14 motions sought discovery that was mandatory under rule 14 (a) (1) (A), including Garcia's address, it is far from clear that the Commonwealth could have successfully excluded this time.  In Commonwealth v. Taylor, 469 Mass. 516, 528 (2014), we declared that where the Commonwealth fails timely to produce mandatory discovery and the defendant moves for sanctions or to compel under rule 14 (a) (1) (C), "the time it takes to resolve the rule 14 (a) (1) (C) motion shall not be excluded automatically [under rule 36 (b) (2)] from the ultimate speedy trial calculation."  Instead, "[the] motion judge is responsible for determining whether any delay occasioned by the resolution of that motion should, in fact, toll the speedy trial clock" by assessing "whether 'the ends of justice served' by exclusion of time spent on a rule 14 (a) (1) (C) motion brought to compel mandatory discovery 'outweigh[] the best interests of the public and the defendant in a speedy trial.'"  Id., quoting Mass. R. Crim. P. 36 (b) (2) (F).  Here, Graham did not specifically

under rule 36 (b) (2) (A) (v) and (vii).  Exclusion of these time periods would have placed the Commonwealth well within the time limits of rule 36, but because the Commonwealth waived these exclusions before the motion judge, it cannot now seek to exclude that time.

However, there are some exclusions under rule 36 (b) (2) that the Commonwealth cannot be held to have waived, because of the unusual posture of these cases and because the Commonwealth did in substance make arguments in support of these exclusions. Specifically, we conclude that the time period between the trial date on June 12, 2017, and the "status conference" on June 19, 2017, should be excluded under either of two exclusions contained in rule 36 (b) (2).

---

frame his motions as motions for sanctions or to compel under rule 14 (a) (1) (C), as he should have to ensure that the time would not be excluded under rule 36 (b) (2).  See Taylor, supra at 527 ("A defendant yet to receive all mandatory discovery must . . . take proactive steps to alert the court and the prosecution that certain items have not been timely produced, and the vehicle for doing so is a motion for sanctions or to compel pursuant to rule 14 [a] [1] [C]").  Perhaps for this reason, there is no indication in the record that the motion judge made any determination whether the time taken to resolve Graham's rule 14 motions should be excluded under rule 36 (b) (2).  Although a judge might still find that Graham's rule 14 motions were in substance motions to compel mandatory discovery under rule 14 (a) (1) (C), and that the resulting delay should not be excluded under rule 36 (b) (2), the Commonwealth could have argued that Graham did not "avail himself of the remedies outlined in rule 14," as required under Taylor, supra, and therefore that the clock should have been tolled.

The first such exclusion is found in rule 36 (b) (2) (B), which provides that "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness" shall be excluded from the rule 36 calculation.  Rule 36 (b) (2) (B) states further:

> "A defendant or an essential witness shall be considered absent when his whereabouts are unknown and he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence.  A defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial."

Importantly, an exclusion under rule 36 (b) (2) (B) is "established by a party on motion for a continuance." Reporter's Notes to Mass. R. Crim. P. 36 (b) (2) (B), supra at 211.

In filing its motion to continue on June 12, 2017, the Commonwealth vigorously argued that the trial date should be continued because Garcia -- a witness who was essential to the Commonwealth's case -- was unavailable.  The Commonwealth specifically sought a continuance so that it would have additional time to effectuate interstate process and secure Garcia's appearance at trial.  The judge denied the motion to continue the June 12 trial date, but also declined to empanel a jury on that date or to dismiss the cases.  Instead, the judge gave the Commonwealth another week to secure Garcia's

appearance, setting a "status conference" for June 19, and informing the prosecutor that if the Commonwealth was "ready to go" on that date, he would empanel a jury. The judge declined to characterize this one-week period between June 12 and June 19 as a continuance, specifically declaring, "I've denied [the Commonwealth's] motion for a continuance." He instead characterized it as a "wait and see" period. We fail to see the distinction. We conclude that, for all practical purposes, the judge granted the Commonwealth a one-week continuance, with trial to begin on June 19 if the Commonwealth could produce Garcia.

Thus, the strange posture of these cases is that, although the judge denied the Commonwealth's motion to continue, he did in effect allow the Commonwealth additional time to secure Garcia's appearance. If the judge had called this one-week period what it was -- a continuance -- then the Commonwealth could have sought to exclude that period under rule 36 (b) (2) (B), as a "delay resulting from the . . . unavailability of . . . an essential witness." There is no doubt that Garcia is an essential witness in these cases.[16] He was also unavailable. As earlier stated, an essential witness

---

[16] In his order allowing the defendants' motions to dismiss, the judge stated, "The Court has no difficulty concluding that . . . Garcia is a necessary and material witness."

whose whereabouts are known is considered "unavailable" under rule 36 (b) (2) (B) "whenever . . . his presence for trial cannot be obtained by due diligence <u>or</u> he resists appearing at or being returned for trial" (emphasis added).  In denying the Commonwealth's motion to continue, the judge concluded that the Commonwealth had failed to exercise due diligence in securing Garcia's appearance at trial.  However, we need not consider whether this was an abuse of discretion because there is undisputed evidence in the record indicating that Garcia resisted appearing at trial, which provides an adequate independent ground for excluding time under rule 36 (b) (2) (B). The period between June 12 and June 19 is therefore excludable under rule 36 (b) (2) (B).

Alternatively, the period between June 12 and June 19 could also fall under rule 36 (b) (2) (F), which excludes "[a]ny period of delay resulting from a continuance granted by a judge . . . , if the judge granted the continuance on the basis of his findings that the ends of justice served by taking such action outweighed the best interests of the public and the defendant in a speedy trial."[17]  In filing its motion to continue on June 12,

---

[17] A period of delay resulting from a continuance may be excluded under rule 36 (b) (2) (F) only if "the judge sets forth in the record of the case, either orally or in writing, his reasons for finding that the ends of justice served by the

the Commonwealth argued that a continuance "[would] not impact the defendants' rights to a speedy trial."  And again, although the judge denied that motion to continue, he did allow the Commonwealth another week to produce Garcia.  In doing so, the judge recognized that, under Mass. R. Crim. P. 10, 378 Mass. 861 (1979) (rule 10), one of the factors that must be considered when determining whether to grant a continuance is "[w]hether the failure to grant a continuance . . . would be likely to make a continuation of the proceeding impossible, or result in a miscarriage of justice."  Mass. R. Crim. P. 10 (a) (2) (A).  According to the judge, it was this factor that "led [him] not to dismiss the case outright on June 12, even as [he] denied [the Commonwealth's motion to continue]."  The judge decided to allow the Commonwealth another week "in an attempt to accommodate the interests of all parties," and because he "expected no prejudice to anyone, if, on June 19, [the parties] proceeded to trial on that same date."  Thus, although the judge did not characterize it as a continuance, that additional week was, in effect, "a continuance granted . . . [based on] findings that the ends of justice served . . . outweighed the best interests of the public and the defendant in a speedy trial," and is excludable under rule 36 (b) (2) (F).  See Commonwealth

granting of the continuance outweigh the best interests of the public and the defendant in a speedy trial."

v. <u>Davis</u>, 91 Mass. App. Ct. 631, 637 n.11 (2017) (rule 36 [b] [2] [F] finding "need not be explicit, but may be implied from the record").

We conclude that, whether based on Garcia's unavailability under rule 36 (b) (2) (B) or on a continuance under rule 36 (b) (2) (F), the period between June 12 and June 19 should be excluded. Although the Commonwealth did not specifically seek to exclude time under these provisions, this was because of the unusual posture that the cases were in: the Commonwealth could not be expected to argue for an exclusion based on a continuance where the judge had specifically stated that he had granted no such continuance.[18] Moreover, the Commonwealth did in substance make arguments in support of these exclusions when it filed its motion to continue, contending that it was entitled to a continuance because an essential witness was unavailable, and that a continuance would serve the ends of justice because it would not violate the defendants' right to a speedy trial. Where the Commonwealth could not have reasonably been expected

---

[18] Indeed, at the hearing on June 12, 2017, the prosecutor expressed confusion over the fact that, although the judge had denied the motion to continue trial, the judge was nevertheless giving the Commonwealth until June 19 to produce Garcia. When the judge reiterated that he had denied the motion and was "not continuing anything," the prosecutor attempted to clarify the nature of the one-week period between June 12 and June 19, stating: "I think it matters what the Court calls it for the record, Judge." To this the judge responded, "We'll call it a status conference, but you're going to impanel if you're ready."

to argue for these exclusions, but nevertheless did establish the grounds for applying them, we conclude that it cannot be held to have waived those exclusions.

Because the eight days between June 12 and June 19 are excluded, the delays here -- two days in Golden's case and four days in Graham's case -- have been justified. Although this alone requires us to vacate the dismissals under rule 36, we also consider whether there are other excludable delays that may affect the amount of time remaining before the cases must be tried on remand or dismissed under rule 36.

b. Exclusions based on defendants' acquiescence. The second way that the Commonwealth can justify a delay is provided not by any provision in rule 36 but by the common law. Under the common law, a defendant is not entitled to dismissal if he or she acquiesced in, was responsible for, or benefited from the delay. See Barry, 390 Mass. at 295. A defendant is held to have acquiesced in a delay if he or she "agreed to a continuance . . . or has not entered an objection to delay." Id. at 298. Thus, in several cases we have excluded time under rule 36 based on the defendant's failure to object to a delay. See, e.g., Roman, 470 Mass. at 93; Denehy, 466 Mass. at 731-732; Lauria, 411 Mass. at 68-69; Farris, 390 Mass. at 305-306. In doing so, we have emphasized that rule 36 imposes obligations on all parties, and that it is the obligation of criminal defendants to

"press their case through the criminal justice system." Lauria, supra at 68, quoting Barry, supra at 297. We have required defendants to object to delays in order to preserve their rights under rule 36 because we recognize that otherwise, "the public interest . . . [may] be thwarted by those defense counsel who decide that delay is the best defense tactic." Barry, supra.

The determination whether a defendant acquiesced in delay is often retrospective, and therefore requires "a thorough examination of the record." Reporter's Notes to Mass. R. Crim. P. 36 (b) (2), supra at 210. We note that, in order to avoid these difficult retrospective determinations, judges should where possible make contemporaneous findings whether time should be excluded under rule 36. In particular, whenever a judge grants a continuance -- whether it be a continuance of the trial date or a continuance of some other scheduled event, such as a pretrial conference or hearing -- the judge should also make a finding whether the continuance serves the ends of justice, such that the resulting delay should be excluded under rule 36 (b) (2) (F). Even where the parties have not requested such a finding, a judge should nevertheless make that finding sua sponte, in order to make clear whether the delay resulting from a continuance can be excluded under rule 36 (b) (2) (F). Such a finding is not burdensome for a judge to make or for a clerk to record; the judge need only find, orally on the record or in

writing, that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial, see rule 36 (b) (2) (F), and the clerk need only make a notation of "ends of justice" in recording the continuance.

But in cases where the parties have not requested such a finding, and where the judge has failed to make one, it becomes necessary to consider retrospectively whether that delay can be excluded based on the defendant's acquiescence.  Here, the Commonwealth contends that almost all of the time that has elapsed in both cases should be excluded based on the defendants' acquiescence, because every time a pretrial event was scheduled, the defendants agreed to the scheduled date or failed to object.  For example, at the pretrial conference on July 14, 2016, the parties agreed to schedule a status conference for September 29, 2016, which was noted in the docket with the following entry:  "Case continued by agreement to 9/26/16 re: Status Conference."  The Commonwealth contends that, because the defendants agreed to this date, they "agree[d] to [a] continuance," and therefore the seventy-eight days between the pretrial conference on July 14 and the status conference on September 29 must be excluded.  Applying this logic to the entire pretrial period, the Commonwealth contends that, every time the defendants agreed to the scheduling of another event,

the time leading up to that event must be excluded based on the defendants' acquiescence. By the Commonwealth's calculation, this would mean that a total of 330 days should be excluded, in both cases, out of the 367 days since Golden's arraignment and the 369 days since Graham's arraignment.

In response, the defendants argue (and the judge agreed) that there is no time that can be excluded based on their acquiescence, because the presumptive trial date of June 12, 2017, was never postponed. They contend that any delay under rule 36 must be measured in terms of impact on the presumptive trial date. Thus, where the presumptive trial date remained unchanged since arraignment, they could not have been expected to object to any delay, because there was no delay for them to object to. Under this interpretation, the clock would not be tolled under rule 36 even if, for example, the defendant agrees to the continuance of a scheduled event, such as a pretrial hearing or conference.

In short, each side interprets rule 36 as working harsh results upon the other. The Commonwealth interprets rule 36 to mean that defendants must object every time an event is scheduled, even if the objection is meritless, or else risk having the time excluded based on their acquiescence. The defendants interpret rule 36 to mean that the speedy trial clock

runs without pause against the Commonwealth unless the presumptive trial date changes.

We reject both of these interpretations. The Commonwealth's interpretation would encourage defense counsel in a criminal case to be obstinate rather than flexible, combative rather than cooperative. It would invite defense counsel to make baseless objections whenever an event is scheduled for the first time. It also mischaracterizes the clerk's language in the docket entries -- stating that the case has been "continued to" various dates -- as evidence of "continuances," when all that it reflects is the next scheduled event in the case.

Meanwhile, the defendants' interpretation fails to recognize that a criminal case has various stages (e.g., pretrial conferences for the exchange of discovery and notice of certain defenses, motions to suppress, the final pretrial hearing to resolve motions in limine and other matters before trial, and the trial itself), and that delay arising in any of these stages is likely to result in delay in the subsequent stages. If there are no excludable delays under rule 36 (b) (2), and if the rule 36 clock cannot be tolled even where the defendant acquiesces in delay during the various pretrial stages, then in complex cases the presumptive trial date is likely, as here, to be at or near the 365-day limit, leaving the Commonwealth with little or no room for error to avoid dismissal

under rule 36 and little time to prepare for trial after the pretrial stages are completed.

Our case law recognizes that preparing a case for trial is a complex process, full of unexpected events and challenges, and rejects any interpretation of rule 36 that would make parties less likely to accommodate each other -- defendants because they may risk losing their rights to a speedy trial and the Commonwealth because it may risk running out of time. Our precedents make clear that time can be excluded based on a defendant's acquiescence if the defendant agreed to or otherwise failed to object to "a continuance or other delay" (emphasis added). Tanner, 417 Mass. at 3. This means that, if an event is scheduled for a certain date, and the defendant assents or fails to object when that event is continued or rescheduled to a later date, then that time can be excluded based on the defendant's acquiescence. For example, if a pretrial hearing scheduled for March 1 is rescheduled by the parties' agreement to March 8, then that eight-day delay may be excluded based on the defendant's acquiescence. Or, if the Commonwealth successfully moves to continue the trial date from August 1 to August 22, without objection from the defendant, then that twenty-two-day continuance can also be excluded based on the defendant's acquiescence. See Commonwealth v. Williams, 475 Mass. 705, 715 (2016) (time excluded based on defendant's

acquiescence where defendant and Commonwealth agreed to continue pretrial hearing date, to extend deadline for filing pretrial motions, and to continue trial date); Commonwealth v. Taylor, 469 Mass. 516, 525 (2014) (time excluded based on defendant's acquiescence where defendant agreed to reschedule presumptive trial date).[19]  But where a defendant agrees for the first time to schedule a previously unscheduled event, there is no "continuance" or "delay" that can be excluded under rule 36.  In these cases, for example, when the defendants agreed to schedule a status conference for September 29, 2016, they were not agreeing to a continuance or delay, because this was the first time a date had been set for that conference.  Just because the docket states that "[the] case [was] continued" does not mean that there was a continuance to which the defendants were required to object, unless an event was in fact continued from an earlier date to a later date, or was not held as scheduled.  Contrary to the Commonwealth's suggestion, nothing in rule 36 or our case law requires defendants to object every time another event is scheduled.  See Spaulding, 411 Mass. at 506 ("[W]e have

---

[19] Time can also be excluded under rule 36 based on a defendant's acquiescence if the defendant allows an already scheduled event to pass without objection.  See, e.g., Commonwealth v. Spaulding, 411 Mass. 503, 507 (1992) (time excluded under rule 36 where defendant allowed scheduled trial date to pass without objection); Commonwealth v. Farris, 390 Mass. 300, 306 (1983) (same).

never held that rule 36 time does not begin to run until the defendant first makes an objection").

This does not mean, however, that defendants are absolved of their duty to "press their case through the criminal justice system." Barry, 390 Mass. at 297.  There are many events that may constitute a "delay," potentially taking up time that may otherwise be used to prepare for trial, even if the presumptive trial date does not change.  Although the more common of these events, such as the resolution of pretrial motions, are enumerated under rule 36 (b) (2), there are also various unanticipated events that the parties may agree to work around. For example, a pretrial hearing may need to be rescheduled if the Commonwealth's attorney cannot attend because of an unexpected family emergency, or a filing deadline may need to be extended if defense counsel has an important deadline in another case falling on the same date.  Such delays may not have any effect on the presumptive trial date, but if the defendant does not object to them, they should not be counted against the Commonwealth.  Here, the judge erroneously focused only on delays that "affect[], or potentially affect[]," the trial date, even though we have never held that a continuance or delay must have an effect on the trial date, presumptive or otherwise, in order for it to be excluded under rule 36.  Indeed, in several cases we have excluded time where the defendant acquiesced in a

delay to an event <u>other</u> than the trial itself.  See, e.g.,

<u>Williams</u>, 475 Mass. at 715 (continuance in pretrial hearing date

and extension of filing deadline); <u>Roman</u>, 470 Mass. at 93

(continuance in pretrial hearing date); <u>Commonwealth</u> v. <u>Rodgers</u>,

448 Mass. 538, 541 (2007) (extension of filing deadline).[20]

Having examined the record to determine whether any delay

here can be justified based on the defendants' acquiescence, we

conclude that much of the time that the Commonwealth claims is

excluded must instead be included.  The Commonwealth contends

that the defendants acquiesced in delay on eight occasions when

they agreed to schedule a previously unscheduled pretrial

event,[21] and on two other occasions when they failed to object to

---

[20] A defendant may also be found to have acquiesced in or
benefited from a delay where a judge proposes a date for the
next event and the defendant asks for that date to be postponed
to a later date.  Where this happens, a judge might find that
the defendant has acquiesced in the delay between the proposed
date and the later date.  But where this happens, it is
important that the judge make a contemporaneous finding of
acquiescence or benefit because, without such a contemporaneous
finding, the docket may simply reflect the scheduled date of
this next event.

[21] The Commonwealth claims that the defendants acquiesced in
delay when they agreed to schedule the following pretrial
events:  (1) a status conference for September 29, 2016; (2) a
motion hearing for January 11, 2017; (3) a status conference for
February 16, 2017; (4) a motion hearing for March 23, 2017; (5)
a status conference for April 25, 2017; (6) a motion hearing for
May 2, 2017; (7) a motion hearing for June 6, 2017; and (8) a
hearing on June 9, 2017.

events that were already scheduled at arraignment.[22]  On none of these occasions was there any "continuance or . . . delay" to which the defendants could have objected.  <u>Tanner</u>, 417 Mass. at 3.  See <u>Barry</u>, 390 Mass. at 296 n.13 ("counsel need not object where a procedure and timetable is established by the rules").[23]

However, the record does reveal two occasions on which the defendants may have in fact agreed to a continuance or delay. In Graham's case, a motion hearing that was scheduled for January 11, 2017, appears to have been continued to February 16, 2017, by the parties' agreement.  Meanwhile, in both cases, a motion hearing that was scheduled for May 2, 2017, appears to have been continued to May 11, 2017, although the docket does not indicate whether this was by agreement.  If the defendants agreed to these continuances or failed to object to them, as the

---

[22] The Commonwealth claims that the defendants acquiesced in delay when they failed to object to events that had already been presumptively scheduled at arraignment:  (1) the first pretrial hearing on December 13, 2016; and (2) the final pretrial hearing on June 1, 2017.

[23] In its opposition to the defendants' motions to dismiss, the Commonwealth also argued that the seventeen days between April 25, 2017, when Graham filed his second rule 14 motion, and May 11, 2017, when the judge ruled on that motion, should be excluded because Graham benefited from this delay.  But where Graham filed this motion because the Commonwealth had failed to provide discovery that was mandatory under rule 14, see note 15, <u>supra</u>, he cannot be held to have benefited from such delay.  Cf. <u>Taylor</u>, 469 Mass. at 527 ("[I]t makes little sense [to exclude time under rule 36 (b) (2)] when a defendant moves to compel production of discovery he indisputably is owed").

Commonwealth alleges, then these time periods -- thirty-seven days for the first alleged continuance and ten days for the second -- could be excluded based on the defendants' acquiescence, placing the Commonwealth within the time limits of rule 36. The docket does not provide us with sufficient information to determine whether there was acquiescence in delay on either of these occasions. Specifically, in Graham's case, it is unclear whether the motion hearing that was scheduled for January 11 was in fact continued, or whether it was simply canceled, with the next event -- the status conference -- scheduled for February 16.[24] And in both cases, it is unclear whether the motion hearing scheduled for May 2 was continued to

---

[24] It is not clear why there was a "motion hearing" scheduled for January 11, 2017, in Graham's case, because at that time Graham had no pending motions. The hearing was described in the docket as a "Hearing Re: Motion to Dismiss," which was likely a reference to a hearing in Golden's case, scheduled for the same date, to hear Golden's motion to dismiss. Golden's motion hearing was held as scheduled.

The docket entry for January 11, 2017, in Graham's case states: "Motion Hearing scheduled for 01/11/2017 . . . has been resulted as follows: . . . Rescheduled. Reason: Defense Attorney failed to appear, Deft not in Court (in Lockup) Cont [t]o 2/16/17 by agree, Hr re: Status conf." This could suggest that, because there was no need for a motion hearing in Graham's case, the parties agreed not to hold one, and agreed to schedule their next event (i.e., a status conference) for February 16, 2017 -- in which case the time between January 11 and February 16 would not be considered a continuance.

May 11 by agreement or whether the defendants objected.[25]  The judge made no findings on these issues, because he assumed, incorrectly, that delay resulting from a continuance could not be excluded unless it affected the presumptive trial date.  On remand, the judge may determine based on an expanded record whether the defendants acquiesced in delay during the following time periods:  (1) between January 11, 2017, and February 16, 2017, in Graham's case; and (2) between May 2, 2017, and May 11, 2017, in both cases.  If so, those time periods must be excluded.[26]

2.  <u>Failure to prosecute</u>.  Having found that the dismissals under rule 36 must be vacated, we turn to the judge's dismissal of the indictments for failure to prosecute.

Even where dismissal is not required under rule 36, a judge nevertheless retains the inherent authority to dismiss an indictment for failure to prosecute.  See <u>Commonwealth</u> v. <u>Jenkins</u>, 431 Mass. 501, 504 (2000).  Where such dismissal is without prejudice, "the judge's action should be upheld in the

---

[25] The docket entry for May 2, 2017, simply states: "[C]ontinued to 5/11/2017 . . . for motion hearing."  The docket elsewhere states that the hearing scheduled for May 2, 2017, was "[r]escheduled."

[26] On appeal, the Commonwealth also claims that the judge's interpretation of rule 36 violates the separation of powers.  Because we conclude that the judge's interpretation is incorrect, and because we vacate the dismissals, we need not address this argument.

absence of an abuse of discretion."  Commonwealth v. Connelly, 418 Mass. 37, 38 (1994).  But where such dismissal is with prejudice, "there must be a showing of egregious misconduct or at least a serious threat of prejudice."  Id.

Here, the judge concluded that there was a violation of rule 36, leaving him with no discretion but to dismiss with prejudice.  But the judge also concluded that, "[i]f the [r]ule 36 period has not expired, such that the Court [does have] discretion [to dismiss], the Court . . . grants the [m]otions [to dismiss] on the ground[s] of failure to prosecute these cases."  The judge further clarified that, "[b]ut for the [r]ule 36 violation, this dismissal would have been without prejudice." Thus, because we have determined that there was no rule 36 violation in these cases, the dismissal based on failure to prosecute must be deemed without prejudice.  We therefore review it for abuse of discretion.

Generally, "where a prosecutor is unprepared to present her case due to the unexpected absence of a witness, a judge has discretion to dismiss the case without prejudice."  Commonwealth v. Lucero, 450 Mass. 1032, 1033 (2008).  However, that discretion is not unlimited.  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls

outside the range of reasonable alternatives" (citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Here, the judge concluded that the cases should be dismissed for failure to prosecute because the Commonwealth was not ready for trial on the first scheduled trial date, June 12, 2017, and was still not ready for trial one week later, on June 19. In reaching this conclusion, the judge weighed the various factors that a court must consider under rule 10 when determining whether to grant a motion to continue. This was appropriate, given that, where a judge is asked to rule on both a motion to continue and a motion to dismiss without prejudice, those decisions are in essence two sides of the same coin: the same factors that would weigh in favor of allowing a motion to continue would weigh against allowing a motion to dismiss, and vice versa. The factors to be considered under rule 10 include "[w]hether the failure to grant a continuance . . . would be likely to . . . result in a miscarriage of justice," and "whether there has been a failure . . . to use due diligence to obtain available witnesses." Mass. R. Crim. P. 10 (a) (2).

We conclude that, in balancing these factors, the judge exceeded the limits of his discretion. In concluding that dismissal would not result in a miscarriage of justice, the judge gave inadequate weight to the public interest in bringing to trial defendants who are charged with murder and to the fact

that barely one year had passed since the defendants' arraignments. Although dismissals without prejudice would not preclude the Commonwealth from seeking new indictments and prosecuting the cases anew, see Commonwealth v. Anderson, 402 Mass. 576, 579 (1988), it is nonetheless a severe sanction that must be exercised with great caution in a murder case that has moved with unusual speed to trial.

The judge also gave great weight to his finding that the Commonwealth had failed to exercise due diligence in securing Garcia's attendance. The judge made this finding without the benefit of an evidentiary hearing, concluding instead that dismissal was warranted even if he accepted as true the facts proffered by the Commonwealth. Therefore, in reviewing the dismissal for failure to prosecute, we also must accept the Commonwealth's proffer as true.

According to that proffer, the police had been in regular contact with Garcia since 2015, long after Garcia would have realized that the Commonwealth had failed to assist him with his own narcotics case, but the police did not learn until June 8, 2017 -- when Garcia stated in a telephone call that he did not "want to be bothered any longer" regarding these cases -- that he was unwilling to testify at trial. To be sure, where there were warning signs that Garcia might no longer be willing to cooperate, the police should have taken steps to assure his

appearance at trial before late May, since it was clear by May 11, when the Commonwealth's first motion to continue was denied, that the trial would proceed as scheduled on June 12. Moreover, when the police were unable to reach Garcia by telephone, they should not have waited until June 7 to send an officer to Florida to locate him. And although it is reasonable for the Commonwealth not to have sought interstate process when it still believed that Garcia was willing to cooperate, if the Commonwealth had moved sooner, it would have realized earlier that it needed to take steps to compel his attendance. Having said that, the Commonwealth did act promptly once it learned that Garcia was unwilling to testify. And although one can fault the effort made by the investigator for the Florida State Attorney's office in attempting to serve Garcia with interstate process, the Commonwealth is not responsible for the quality of that effort. In short, even if the judge was correct that the Commonwealth had not exercised due diligence in procuring Garcia's attendance at trial, its lack of diligence does not rise to the level that we have, in other cases, recognized as justifying dismissal for failure to prosecute, especially where the indictments are for murder and where only one additional week had been given to locate and produce Garcia for trial. See, e.g., Anderson, 402 Mass. at 579 (dismissal within judge's discretion where prosecutor was repeatedly tardy and not ready

to proceed on first day of trial); Commonwealth v. Joseph, 27 Mass. App. Ct. 516, 518-519 (1989) (dismissal within judge's discretion where prosecutor was not ready for trial because of witnesses' absence, apparently made no "inquiry concerning [their] absence," and took "cavalier attitude" toward case). See also Commonwealth v. Clark, 454 Mass. 1001, 1002 (2009) ("a judge has the authority to dismiss an indictment . . . where the Commonwealth has repeatedly failed to produce its witnesses and effectuate a prosecution" [emphasis added]).

In such circumstances, we expect a judge presiding over a murder case to give the Commonwealth more time to locate a recalcitrant essential witness, and to dismiss for failure to prosecute only where it is apparent that continued diligent efforts would prove futile. Where the interests of justice so require, and where the defendant's appearance at trial can be assured, a judge may diminish the prejudice to the defendant resulting from such a continuance by releasing the defendant on bail with appropriate conditions, as the judge did here during the pendency of this appeal.

Finally, although the judge identified the Commonwealth's failure to prosecute as a separate and alternative ground for dismissal, we note that he may have relied to some extent on his erroneous conclusion that dismissal was required under rule 36. He wrote, for example, that, "[w]ere it not for the expiration

of the [r]ule 36 period, the Court might have waited slightly longer before dismissing the case, if there were even a glimmer of hope that the Commonwealth might actually secure . . . Garcia's testimony."  Because he failed to fully consider certain factors when exercising his discretion, and because his reasoning appeared to rest in part on his view that the time limits under rule 36 had run, we conclude that the judge abused his discretion in dismissing the indictments for failure to prosecute.

Conclusion.  For the foregoing reasons, the order allowing the defendants' motions to dismiss is vacated.  The cases are remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.